Graves v. Shattuck.

---

## GRAVES v. SHATTUCK et als.

The jury must determine, from all the circumstances of each particular case, whether an object permanently placed, temporarily left, or slowly moving in a public highway, is or is not a nuisance; and this determination must depend on their finding whether or not the given object, under all the circumstances attending its occupancy of the highway, unnecessarily obstructed the free passage of the public over and upon it.

Graves *v.* Shattuck.

Highways may lawfully and properly be used for other purposes than the accommodation of the public travel, provided such use be not inconsistent with the reasonably free passage of the public over them. They are designed and constructed for general convenience, and may be used, as they have ordinarily been accustomed to be used, without nuisance. Time and necessity, as well as locality, are important elements in determining the character of any particular use of a highway.

Where highways have been commonly used for moving buildings through them, it is no nuisance to use them for that purpose, selecting suitable streets, using proper expedition and causing no unnecessary obstruction; and the reasonableness of such use, under all the circumstances thereof, is a question for the jury.

If a party assume that a building, which is being moved through a public highway, is a nuisance, and undertake to abate it as such, he does so at the risk of being deemed a trespasser, if he fail to establish the existence of the nuisance, or if he employ unnecessary force and unwarrantable means for its removal.

If the private property of an individual is imperiled by a moving building, he has the right to use whatever force is necessary to protect and defend that property from injury. A mere prospect of future injury will not justify the destruction of the building, unless it be a common nuisance. Where there is time and opportunity for the interposition of an adequate legal remedy, which may be effectual, the law will not justify a summary resort to force.

The law of the road, as it is commonly termed, does not apply to buildings that are being moved through a public highway.

Towns are not bound to grade the whole width of common highways; in cities and villages, foot passengers may properly be accommodated and protected by side-walks, curb-stones, posts and railings, to the exclusion of carriages from a part of the way; adjoining land-owners may lawfully use the space between the carriage path and such side-walks for the growth of trees for ornament or use; and trees thus situated are in no sense nuisances, but private property, specially protected by statute; and if they are injured or unreasonably endangered by a building that is being moved through the highway, their owners are justified in employing sufficient force to protect them from actual or impending destruction.

THE writ was dated March 28, 1853, and contained four counts. Three of them were in trover for the conversion of certain buildings. The fourth count was in case, alleging that the plaintiff was the owner of a building known as the Pearson block, in Nashua, which he was bound to remove by the contract under which he bought it; that he prepared to remove it in three parts; that he commenced to remove it, and that the defendants concerted together to injure him by obstructing him and his agents

in such removal through the public highways; and that by force, by obstructions placed in the highways, and by threats of violence, the defendants prevented the plaintiff from removing said building, and he was subjected to great expense.

The defendants severally pleaded the general issue, with a brief statement.

Two of them gave notice that they should show in defence that they were at the time of the alleged injury surveyors of highways, and did the acts complained of under warrants from justices of the peace, under chapter 63 of the Comp. Stat.; also, that said buildings were a public nuisance on said street, and that they entered said buildings and did the acts alleged for the purpose of abating such nuisance, doing no unnecessary damage.

Three of the other defendants gave notice that they should show in defence that the plaintiff threatened and attempted to move said building through said Cross street, to the obstruction of the travel and to destroy the trees of the defendants in said street, and injure their other property; and that all the acts done were done and were necessary to prevent said plaintiff from moving his building through said street, to the great obstruction of the travel and injury to the trees and other property of the defendants.

The other defendant gave notice of defence that he was the son of one of said owners, and acted as his servant to prevent the injury to his property and the obstruction of said street.

It appeared on trial, at the November term, 1856, of the Court of Common Pleas for this county, that the plaintiff purchased of the Lowell & Nashua Railroad Company the building known as " the Pearson block," and agreed to remove it from their land; that he employed one Bunker to remove it in three parts, through Cross street, on to the plaintiff's lot beyond.

The main part was seventy-four feet long by about twenty-two feet wide, and the two wings each about twenty-two by thirty-six feet; one of them two stories, the other three stories high.

It appeared that the two defendants who gave notice of a justification as surveyors, were selectmen of Nashua, and had been

chosen surveyors of highways, but did not take their oath of office until a part of the obstruction by them had occurred, and that they were not owners of property upon Cross street. It appeared that the three who justified as owners, each owned a house and lot on Cross street, and that said street was about forty feet wide, including a side-walk on each side, with shade trees growing between the travelled carriage path and the side-walks, opposite each of said lots, through a part of the street.

The plaintiff offered evidence tending to show that Cross street was sufficiently wide to allow the building to be passed through without injury to any of the trees growing there; that although the line of the trees, had they been continuous on both sides, might have made the passage too narrow, yet that the trees were not opposite each other, and there was room enough by changing the building from side to side of the street, at certain points, to avoid any injury whatever to any tree.

The defendants offered evidence tending to show that it was impossible to move the building through Cross street without destroying or injuring their trees, and that the said Bunker, who had charge of moving said building, had declared that trees in the streets were nuisances, and that he had a right to remove them, and would do it if they were in the way of his moving said buildings; and that he had in fact injured trees, by moving the said buildings, before they were obstructed at Cross street; and that a tree standing at the corner of Cross street had been broken and injured by said building, before said obstruction.

There was evidence tending to show that said Cross street and other streets through which said building had passed before arriving at Cross street, were for a time wholly obstructed by the building, so that carriages could not pass through the streets, though the evidence was conflicting as to the extent of the obstruction.

It appeared, however, beyond controversy, that said building must in Cross street occupy much more than half the whole width of said street.

The court instructed the jury that the question whether any

thing within the limits of a highway is to be deemed a nuisance, is a question of fact, to be settled by a jury, and depends upon the inquiry, whether it unnecessarily obstructs the free passage:

That an object may obstruct the whole passage for the time, and not be a nuisance, as a heavy team with long timber or masts, at particular angles or turns in the road; that an object may be a nuisance though not obstructing entirely the passage, as in the case of a building partly across, but leaving a narrow and dangerous passage, if it be an unnecessary obstruction; that time is an important element in the question, and that an object while necessarily in the highway may not be a nuisance, which, if left remaining there unnecessarily, would become a nuisance:

That, applying these principles to this case, highways may be used for such purposes as people are accustomed to use them in the region which they are designed to accommodate, not only for daily but occasional uses; that if the streets of Nashville, and streets of such a character as these streets have been commonly used for the moving of buildings, and the plaintiff was in the reasonable use of such streets, and moved his building, causing no unnecessary obstruction, selecting suitable streets and using proper expedition, the building was not a common nuisance, which any person may abate; otherwise it was such a nuisance, and the defendants, living in the street and having daily occasion to use it, would be justified, as private persons, in removing it, doing no more than necessary damage to it.

As to the justification by the defendants as owners, acting in defence of their property, the court instructed the jury: That a man may keep others off of his premises if they are unlawfully there, using only the force necessary; that the public have only a right of way over streets and other highways, and that the abutting owners are presumed to own to the centre; that the public have such right of way for such travel as highways are used for by the customs of the inhabitants which such ways are designed to accommodate, whether on foot, on horses, in carriages, or for hauling larger objects, as buildings, and that no one is a trespasser in pursuing any such accustomed use of a

highway; that the public are bound to provide roads reasonably safe and convenient for the kind and amount of travel which they are designed to accommodate, and that it is for the jury to say when they are so; that what would be a reasonable, safe and convenient road in a remote rural district, might not be so in a city or village:

That towns are not bound to grade the whole width of their common highways; that in cities and villages they may reasonably accommodate and protect foot-passengers by side-walks, curb-stones, posts and railings, and so exclude carriages from a part of the way, leaving them a reasonable, safe and convenient passage; that such curb-stones, posts and railings are in no sense nuisances; that where side-walks are thus reasonably set apart, the owners of the soil may use the dividing space between the travelled path and side-walk for trees, for ornament or use, and that trees thus situated are in no sense nuisances, but are specially protected from injury by statute:

That trees thus situated are the private property of the adjacent owner, and any one who injures them is a trespasser against such owner.

The owners then might protect their trees thus situated, against an impending injury, by force. If the building was of a size, or was moved in a manner to unreasonably endanger the trees thus growing, the owners were justifiable in opposing it by force sufficient to prevent the injury. It would be monstrous to hold that a street in a city or village, ornamented with handsome shade trees from end to end, on each side, and occupied merely for private residences, with walks for foot-passengers, protected by posts or railings, is to be desolated by having a building filling the whole width forced through it, destroying in a day the combined efforts of man and nature for half a century.

But the fact alone that it is *a building* that is approaching, would not justify owners in opposing its progress, if it did not endanger their property and was not a common nuisance.

Nor would the fact that such building occupied more than half the travelled part of the road justify the owners or others in

Graves *v.* Shattuck.

opposing it. Although it must occupy much more than half the travelled path, the owner or person moving it is not for that reason a trespasser on the private property of the owners of the land over which the highway passes. The law of the road is for the regulation and protection of persons travelling the highway, and if any person thus travelling is obstructed or injured by the neglect of another to comply with the law of the road, he has his remedy for such obstruction or injury; but the law of the road as to turning to the right does not make this plaintiff a trespasser, because his building could not thus comply with the law of the road in its progress.

The court further charged, that although a building might encroach so much as to so narrow the road that a surveyor might legally remove it, yet if it endanger no private property and be not a common nuisance, no private citizen has the right to oppose its progress; that the law is always to apply the remedy, where there is time for it effectually to act, and that parties are not justified in using force to defend their persons or property from injury, where there is time and opportunity to interpose a legal remedy by process which is adequate and effectual; but that when danger is imminent to their persons, or to their property in possession, they need not wait and allow the injury to be committed, and then seek legal redress, but may prevent such injury by so much force as is necessary to prevent it, doing no unnecessary damage.

A verdict upon each count, and also a general verdict, having been rendered against all the defendants, they move to set the same aside and for a new trial, for misdirection of the court in the instructions to the jury, as above set forth, and filed their exceptions.

*A. W. Sawyer, A. F. Stevens,* and *D. Clark,* for the defendants.

*Hughes & Wilcox,* and *Morrison,* for the plaintiff, cited to the point that the question whether any thing within the limits of a

highway is to be deemed a nuisance, is a question of fact, to be settled by a jury, and depends upon the inquiry whether it necessarily obstructs the free passage. *Hopkins* v. *Crombie*, 4 N. H. 525 ; *Attorney General* v. *Sheffield Gas Co.*, 19 Eng. L. and Eq. 652 ; *Rex* v. *Betts*, 22 Eng. L. and Eq. 246 ; *Rex* v. *Charlesworth*, 22 Eng. L. and Eq. 235 ; *Rex* v. *Russell*, 6 B. and C. 566 ; *Rex* v. *Ward*, 4 A. and E. 384 ; *Merrick* v. *Van Rensselaer*, 15 Wend. 397 ; Story's Eq. Jurisprudence, sec. 923 ; 1 Humph. (Mich.) 273.

To the point that, although the primary object of highways is the free passage of the public, they may lawfully be used for other purposes, *Hopkins* v. *Crombie*, *Attorney General* v. *Sheffield Gas Co.*, before cited, and *People* v. *Cunningham*, 1 Denio 524 ; *Rex* v. *Jones*, 3 Campbell 230 ; 1 Humph. 524.

As to the rights of the public and abutting owners in highways, and the duties and liabilities of towns as to their highways, they referred to *Bacon* v. *Boston*, 3 Cush. 180 ; *Fitz* v. *Boston*, 3 Cush. 365 ; *Raymond* v. *Lowell*, 6 Cush. 534 ; *Howard* v. *Bridgewater*, 16 Pick. 190 ; *Johnson* v. *Whitefield*, 18 Me. (6 Shep.) 286 ; *Copp* v. *Neal*, 7 N. H. 275.

That the law of the road extends only to the regulation of the conduct and rights of persons travelling with carriages at the time and place of meeting and while passing each other, they cited *Brooks* v. *Hoit*, 14 N. H. 190.

FOWLER, J.* As the defendants have not furnished, in brief or argument, any specification or suggestion in what particulars or for what reasons the instructions of the court below were regarded as erroneous, we have carefully examined and considered them, but have been unable to discover any thing therein of which the defendants have just cause to complain.

That the jury must determine, from all the circumstances of each particular case, whether any object permanently placed,

* PERLEY, C. J., and SAWYER, J., having been of counsel, did not sit in this case.

Graves *v.* Shattuck.

temporarily left, or slowly moving in a public highway, was or was not a common nuisance, is too well settled by authority, and too clear, upon well established principles, to admit of doubt; and it is equally well settled and equally clear that, at common law, this determination must depend upon their finding of the fact, whether the given object, under all the circumstances accompanying its occupation of the highway, did or did not unnecessarily obstruct the free passage of the public over and upon such highway. *Hopkins* v. *Crombie*, 4 N. H. 525, and authorities there cited.

The first and principal design of highways is the accommodation of the public travel, and cities and towns are required by statute to construct and maintain them in suitable condition for that purpose; but they may lawfully be used for other purposes, provided such use be not inconsistent and incompatible with the reasonably free passage over them of whoever has occasion to travel upon them. They are designed and constructed for the general convenience of mankind, to be used for all those purposes to which from the earliest period of their construction they have been accustomed to be appropriated, and it cannot be a nuisance for any one to use them as they have been ordinarily used. Very much depends upon locality, the width of the highway and the time it may be obstructed by the alleged nuisance. What would be a reasonably free passage for the public — what would be a reasonably safe and convenient road for the accommodation of the public travel in a remote, sparsely populated, rural district, might and generally would not be so in a compact city, or a large and populous village. So, too, in a village or city, what would be no obstruction in a broad street, little frequented, might be very objectionable, if not an absolute nuisance, in a narrow business thoroughfare.

If public highways in Nashua and similar localities had been commonly used for the purpose of moving buildings, the plaintiff was guilty of no nuisance in moving his building through them, provided he selected suitable streets, used proper expedition, and was in the reasonable use of such streets, under all the circum-

stances shown in evidence, causing no unnecessary obstruction therein ; and this whole question was properly submitted to the jury, and their verdict settles it conclusively in favor of the plaintiff.

In the *Attorney General* v. *The Sheffield Gas Consumer's Co.*, 19 Eng. Law & Equity 639, which was an information and bill, asking for an injunction to prevent the defendants, who were a joint stock company, without any special act of incorporation or authority, to lay their pipes in the public highways or streets, from laying gas pipes in the streets or highways of the borough of Sheffield, and from breaking up or disturbing for that purpose the road or pavement of said streets or highways, or doing any other act whereby the passage of Her Majesty's subjects along said streets should be obstructed or rendered less safe or convenient, on the ground that such breaking up of the streets and highways would be a public injury, amounting to a public nuisance, the injunction was refused and the bill and information dismissed. In the course of the opinion of the court announcing this result, the Lord Chancellor remarked :

" I must say that when the cause was argued in August last, and I myself said we did not want any court of law to tell us that the tearing up of the pavement was a nuisance, I did not advert to the particular circumstance or act contemplated by these defendants, but merely to the general proposition ; and I cannot now say that it appears to me absolutely impossible to be held that the taking up of the pavement for such a purpose as this is a nuisance. I do not say how the matter may be, but it may be held to be analogous to this sort of thing : If I were to station a cart in the street opposite my door, obstructing the public highway, I might be guilty of a nuisance, for aught I know, and I might be liable to be indicted; but it would be a sufficient answer to say, that the cart was there only a reasonable time and for a lawful purpose. If it is used in the way in which such things are ordinarily used, it cannot be a nuisance so to use it. The public highway is for the convenience of mankind, and so to use it cannot be a nuisance. One of the uses is, that a person

travelling with a cart or carriage may draw up at a particular door, and get down, according to his lawful occupation. So, again, if I have a cart come to my house with five or six tons of coals, of course it will be some time obstructing the public highway ; but it is difficult to maintain that, in an ordinary street, that would be a nuisance. All these cases of nuisance or no nuisance, arising from particular acts, must, from the nature of things, be governed by particular circumstances." " You must be guided by particular circumstances ; you must look at the particular place or object the parties have in view. I take it that all these questions are of this nature : Are you using the subject matter of injury in a reasonable way, and are those the uses for which it was contemplated ? It may be that tearing up the pavement is not, even for the purpose of laying down gas pipes, anything that was ever in contemplation, and that it cannot be done without the authority of the legislature, or some other competent authority."

In *Commonwealth* v. *Passmore*, 1 Serg. & Rawle 219, where the defendant was indicted for a nuisance in placing goods on the foot-way and carriage-way of one of the public streets of Philadelphia, and suffering them to remain there for the purpose of being sold at auction, Chief Justice *Tilghman* said :

" It is true that necessity justifies actions which would otherwise be nuisances. It is true, also, that this necessity need not be *absolute ;* it is enough that it be *reasonable.* No man has a right to throw wood or stones into the street at his pleasure. But, inasmuch as fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time. So, because building is necessary, stone, bricks, lime, sand and other materials may be placed in the street, provided it be done in the most convenient manner. On the same principle, a merchant may have his goods placed in the street, for the purpose of removing them to his store in a reasonable time. But he has no right to keep them in the street for the purpose of selling them there, because there is no necessity for it."

A similar doctrine is recognized in *Rex* v. *Russell*, 6 East 427, and in *People* v. *Cunningham et al.*, 1 Denio 524.

In the *King* v. *Jones*, 3 Campbell 230, where the defendant was indicted for obstructing a highway by depositing long pieces of timber in the street, and keeping them there until they were sawed up, because his yard was not large enough to receive them entire, Lord *Ellenborough* remarked :

" If an unreasonable time is occupied in the operation of delivering beer from a brewer's dray into the cellar of a publican, this is certainly a nuisance. A cart or wagon may be unloaded at a gateway, but this must be done with promptness. So as to the repairing of a house ; the public must submit to the inconvenience necessarily occasioned in repairing the house ; but if this inconvenience be prolonged for an unreasonable time, the public have a right to complain, and the party may be indicted for a nuisance."

Indeed, the doctrine of all the cases on this subject that we have examined, seems to be in accordance with the instructions of the court below, that the law justifies obstructions of a partial and temporary character, from the necessity of the case and for the convenience of mankind, when those obstructions occur in the customary or contemplated use of the highway, and that the question of their necessity and reasonableness, and of the customary or contemplated use, is one for the consideration and determination of the jury, under all the circumstances of each particular case.

Nor have the defendants any reason to object to the instructions of the court in regard to the justification by the defendants, whether, as citizens, or as owners, in defence of their property imperiled, or supposed to be endangered by the plaintiff's building. In assuming that building to be a nuisance, as it was situated in the highway, and undertaking to abate it as such by force, the defendants took the risk of being deemed trespassers, if they should fail to establish the existence of the nuisance, or, having established it, should be found to have employed unreasonable and unnecessary force and unwarrantable means for

its removal; and on both these points the verdict of the jury, under the instructions given, is conclusive against them.

Any person may abate a common nuisance. *Viner's Abr.*, Nuisance, T., pl. 3, and W., pl. 4; Bacon's Abr., Nuisance, C; Comyn's Dig., Case for Nuisance, D. 4; 3 Black. Com. 5, 7; *James* v. *Hayward*, Cro. Charles 184; *Houghton* v. *Butler et al.*, 4 D. & E. 364. But he does so under the peril of being deemed a trespasser, unless the existence of the nuisance is established. *Wetmore* v. *Tracy*, 14 Wendell 255.

If the defendants' shade trees, their own private property, were imperiled by the plaintiff's building, they had a right to use whatever force was necessary to defend and protect that property from injury. If they proceeded beyond that, they became trespassers, and were liable for any excess of force employed by them. But the mere fact that the building was in the street, and approaching the private property of the defendants in a way that might be likely to endanger it, would not justify them in destroying the building. They could not lawfully interfere with it, unless it were a common nuisance, or actually endangering their property at the time. Where there is time and opportunity for the interposition of a legal remedy, by process which is adequate, and may be effectual to prevent the probable injury to property, the law will not justify the summary employment of force. The danger must be imminent to authorize private individuals to take the execution of the law into their own hands.

*Brooks* v. *Hart*, 14 N. H. 307, conclusively settles the correctness of the instructions as to the non-application of the law of the road to the case of a moving building. By that decision, the law referred to is expressly limited to the regulation of the conduct and rights of travellers with vehicles at the time and place of meeting, and while passing each other. The doctrine of that decision was reaffirmed in *Norris* v. *Litchfield*, 35 N. H. 271.

The powers and duties of towns, and their liabilities in relation to the construction and repair of highways, and the rights of adjoining land-owners, are so well understood, and have so

recently been considered and discussed, in the cases of *Hubbard* v. *Concord,* 35 N. H. 52, and *Johnson* v. *Haverhill,* 35 N. H. 74 ; and in *Baker* v. *Shepard,* 4 Foster 208, and *Blake* v. *Rich,* decided in Coös, July term, 1856, that it is hardly necessary or useful again to consider them. It is sufficient to say that the instructions on these points seem to have been in strict accordance with the well settled law of this State. *Copp* v. *Neal,* 7 N. H. 276, and authorities there cited.

It seems entirely clear that the interest of the public in a highway consists solely in the easement or right of passage, with the right to construct and repair, while the general, *primâ facie* presumption of law is, that the freehold of the road, *usque ad medium filum viœ,* is in the proprietors of the land on either side thereof; that towns are not bound to grade the entire width of their common highways; that in cities and villages they may reasonably accommodate and protect foot passengers by sidewalks, curb-stones, posts and railings, and so exclude carriages from a part of the way, leaving them a reasonably safe and convenient passage; that such curb-stones, posts and railings, properly constructed, are in no sense nuisances; that where side-walks are thus reasonably and properly set apart, the owners of the soil may lawfully use the dividing space between the carriage path and side-walks, for the growth of trees for ornament or use, and trees thus situated are in no sense nuisances, but specially protected from injury by statute (Comp. Stat., ch. 560, sec. 19;) that such trees are presumptively the private property of the adjacent land-owner, and whoever injures them is presumptively a trespasser against such owner; that trees thus situated and owned may lawfully be forcibly protected by their owners against an impending injury; and that if the plaintiff's building were of such a size, or moved in such a manner as to injure or unreasonably endanger trees thus growing, their owners would be justified in employing against it sufficient force to protect the trees from actual or threatened injury.

The remarks of the court below as to the wanton and ruthless destruction of useful or ornamental shade trees, by forcing

through a street a building occupying its whole width, thereby destroying in a single day the combined efforts of man and nature for half a century, were strong and emphatic, but not more so than the aggravated nature of the supposed desolation would seem to demand and justify. At all events, the defendants cannot, and the plaintiff does not, complain of them.

It is, however, entirely unnecessary to reäffirm, in detail, the instructions of the court below. We see in none of them any thing objectionable as matter of law, or in any way prejudicial to the legal rights of the defendants, against whom a verdict was returned upon every count of the declaration, as well as generally. There must, therefore, be

*Judgment upon the verdict.*