Merrimack, }
  Dec., 1900. }

## LANE *v.* CONCORD.

In an action against a municipal corporation for creating a nuisance by dumping refuse material upon a vacant lot adjoining the plaintiff's premises, a city ordinance prohibiting the acts complained of is competent evidence upon the question of reasonable use, but not conclusive.

In such action it is incumbent upon the plaintiff to establish the propositions that the deposit complained of was injurious to health, and that the defendants' use of the premises was unreasonable under all the circumstances.

The unsightly appearance of a vacant lot which is used as a dumping ground for refuse material does not entitle an adjoining landowner to damages.

CASE, for creating a nuisance to the plaintiff's injury. Trial by jury and verdict for the defendants.

The plaintiff owns a lot of land with a house upon it, in Concord. The land adjoining slopes toward the west, and, at a distance of about one hundred feet from the house, is low and wet. The owners of this land, being desirous of grading it to a higher level, gave the defendants license to dump upon it the materials collected by them in cleaning the streets and removing garbage or refuse matter placed at the sides of streets by residents, for removal. Job teamsters and other persons also dumped waste materials there. The materials thus placed upon the land consisted of sand, gravel, brush, leaves, grass, coal ashes, tin cans, stove pipe, broken earthen and glass ware, rags, old boots and shoes, hoopskirts, paper, old mattresses, decayed apples, etc. There was evidence that a dead cat was found there at one time.

Between May 1, 1897, and the date of the writ (September 15, 1899), the defendants placed a large quantity of materials upon the lot. They cleaned out the catch-basins at the sides of streets each spring and fall, and dumped upon the lot the contents of those located within an eighth of a mile of it. The surfaces of these streets are made of sand or gravel. The contents of the basins consisted of sand, gravel, leaves, and other substances washed into them from the streets. The basins are so constructed that substances heavier than water settle to the bottom, and the water flows into the sewer through a pipe extending from the side of the basin, at a point two or three feet above its bottom, in a descending line to the sewer. A portion of the contents when taken from the basin is suspended in water, forming a semi-fluid mixture. The contents when first taken out, and for five or six hours afterward, emit an odor. The defendants also dumped upon the lot materials of the kinds above mentioned; but their evidence tended to show

that they did not place there any animal or vegetable matter other than brush, leaves, grass, rags, and old leather.

The plaintiff introduced in evidence the following ordinance enacted by the city council: "No person shall place or leave, or cause to be placed or left, in or near any highway, street, alley, or public place, or any private lot or enclosure, or in any pond or other body of water where the current will not remove the same, any rubbish, dirt, soot, ashes, hay, shreds, oyster, clam, or lobster shells, tin cans, decaying fruit or vegetables, waste water, or any refuse animal or vegetable matter whatsoever, or keep in or about any dwelling-house, barn, shed, store, shop, or cellar, any of the aforesaid substances in any manner liable to become putrid or offensive or injurious to the public health."

The jury were instructed, among other things, in substance, that the defendants, under the license from the owners of the land, had the same rights which the owners had in respect to placing materials upon it; that they might place any materials there they saw fit, provided they kept the materials and the products of them upon the land and did not allow the materials or anything arising from them to go upon the adjoining premises; that if it was a reasonable use of the land, in view of the rights of the owners, the plaintiff, and other adjoining owners, to place decaying vegetable and animal matter upon it, the defendants would not be liable, although gases arising from such substances went upon the plaintiff's land, but they would be liable if such use was unreasonable under all the circumstances. No exception was taken to these instructions. In connection with them, the following were given: "Right here is the relevancy of the ordinance that has been put in. It has no other bearing in the case. The plaintiff has put in a city ordinance which, in substance, prohibits persons from depositing upon the highways, or land adjoining highways, certain substances, and subjects persons to a fine if they violate the ordinance, provided these substances cause injury to health. Now the only relevancy of this ordinance — its only bearing in this case — is as to the reasonableness of the act of the city in placing, if it did place, decaying vegetable and animal matter upon the lot. If the city placed matter there that was liable to decay and produce gases which were liable to escape to the adjoining premises, the ordinance is competent evidence and has a bearing on the question whether the act was reasonable or not; and it has no bearing upon any other question in the case." The plaintiff excepted "to the instruction that the ordinance prohibits the placing of any decaying animal or vegetable matter on or near any highway, that is injurious to the public health." The jury were also instructed that the unsightly appearance of the lot was not a cause for which the

plaintiff was entitled to damages; that if she was not injured by something coming from the premises upon her land,—gases or something else,—she had no right to complain.    To this instruction she excepted.

The plaintiff's request to instruct the jury in the following words,—"The city ordinance prohibits the placing of any rubbish, dirt, soot, ashes, hay, shreds, oyster, clam, or lobster shells, tin cans, decaying fruit or vegetables, waste water, or any refuse animal or vegetable matter whatsoever, in or near any highway, or in any private lot,"—was not complied with, and she excepted.

In the course of the trial the plaintiff requested a ruling that the ordinance was conclusive on the question of reasonable use. The request was denied, and she excepted.

The plaintiff moved to set aside the verdict for errors in the rulings excepted to, and also excepted to the denial of that motion.

*Eastman & Hollis* and *Harry J. Brown*, for the plaintiff.

*Sargent, Niles & Morrill*, for the defendants.

BLODGETT, C. J.    The plaintiff's action was not for an alleged violation of the ordinance, but for the creating of a nuisance to her injury.    To maintain her action, it was incumbent on her to establish the propositions that the defendants committed the acts complained of, and that such acts wrongfully injured and damaged her in her person or estate.    But in the determination of the latter issue, the ordinance was merely competent evidence to be considered by the jury, in connection with all the circumstances of the case, on the question of the defendants' liability (*State* v. *Railroad*, 58 N. H. 408, 410 ; *Brember* v. *Jones*, 67 N. H. 374 ; *Bly* v. *Street Railway*, 67 N. H. 474, 478, and cases cited), unless a different rule is applicable to them than that to which others are subjected, which we do not understand to be so.    The ordinance not being conclusive as to others violating its provisions, there would seem to be no sound reason why it should be held to be conclusive as to the defendants.    If the city councils were to be regarded as mere private agents of the defendants, it might be otherwise.    But they are not to be so regarded.    "They are public officers, having their duties prescribed by law for the general welfare," and, therefore, as such officers, the passage of the ordinance by them in the performance of these duties imposed no different liability upon the defendants than it did upon others. See *Rossire* v. *Boston*, 4 Allen 57, 58, and *Smith* v. *Epping*, 69 N. H. 558, 560.    It follows that if the defendants' acts were in violation of the ordinance, it would not as matter of law entitle

the plaintiff to a recovery; and if it would not, the requested ruling, that the ordinance was conclusive on the question of reasonable use, was properly refused.

The instruction as to the legal meaning and effect of the ordinance was correct. The plaintiff's ground of complaint to it is, that under it she was compelled to establish that the substances deposited on the lot by the defendants were injurious to health, in order to get any benefit from the ordinance, even as evidence bearing on their reasonable use. This imposed no wrongful burden upon her. If, as is claimed in her behalf, the ordinance was passed under the legislative authority conferred by section 10, chapter 50, of the Public Statutes, the only specific and definite authority granted which affects this case is "to prohibit any person from bringing, depositing, or leaving within the city any dead carcass or unwholesome substance." But this prohibition evidently applies only to those substances which injuriously cause injury to health. Whether the legislature might have gone farther and included all the substances enumerated in the ordinance, it is therefore unnecessary to inquire. It is enough for the present purpose that it has not done so, and consequently the entire ordinance has not, as contended by the plaintiff, "all the force and effect of a statute."

It is elementary that ordinances, other than those passed by virtue of an express grant or power, must be reasonable and not oppressive, and that when they are in contravention of a common right they are void. So tested, the sweeping effect of the ordinance in hand claimed by the plaintiff cannot be sustained upon the facts before us. It would be a clear and direct restraint upon and invasion of the right of property, and an unreasonable infringement of private rights, without any compensating advantages, by depriving the lot-owner of his reasonable and common right of filling, grading, improving, and beneficially enjoying it, and therefore the ordinance can be sustained only for the preservation of the public health. "When an ordinance is entire, each part being essential and connected with the rest, the invalidity of one part renders the whole invalid; but when it consists of several distinct and independent parts, as when [as in the present case] it prohibits disjunctively two or more acts, the invalidity of one part does not affect the validity of others." 17 Am. & Eng. Enc. Law 265, 266. The true test to be applied to the defendants' acts, aside from their effect on the public health, was their reasonableness or unreasonableness under all the circumstances (*Ladd* v. *Brick Co.*, 68 N. H. 185, 186); and this was the test applied at the trial.

For injuries which unavoidably result from the ordinary use of property, no nuisance can arise; and as a general rule, every person has the right to subject his property to such uses as will in

his judgment best subserve his interests. This rule has its exception, however, for it is doubtless true that every one is bound to make a reasonable use of his own property so as to occasion no unnecessary damage to others; but what constitutes such a use cannot be precisely defined, and must depend upon the circumstances of each case. Nevertheless, we think it may be stated as a general doctrine that, in order to constitute a nuisance from the use of one's property, the use must be such as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment specially uncomfortable and inconvenient. See *Campbell* v. *Seaman*, 63 N. Y. 568, — 20 Am. Rep. 567, 572; *Sparhawk* v. *Railway*, 54 Pa. St. 401; *Rhodes* v. *Dunbar*, 57 Pa. St. 274; *Wahle* v. *Reinbach*, 76 Ill. 322; *Barnes* v. *Hathorn*, 54 Me. 124; *Columbus etc. Coke Co.* v. *Freeland*, 12 Ohio St. 392; *St. Helen's Smelting Co.* v. *Tipping*, 11 H. L. Cas. 642; *Salvin* v. *Coal Co.*, L. R. 9 Ch. App. Cas. 705.

In this view of the law, as well as of the use to which the lot was subjected by the defendants and the occasion for such use, we are of opinion the jury were properly instructed that the unsightly appearance of the lot was not a cause entitling the plaintiff to damages, and that unless she was injured by gases or something else coming from the city lot on to her premises, she had no right to complain. Unless "gases or something else" did come upon her land from that lot, it is not perceived how she could have suffered any legal injury from the substances deposited thereon, for it is apparently well settled that the unsightly condition of one's premises does not of itself afford a right of action to a more æsthetic adjoining owner. Wood Nuis. (2d ed.) 4–6, 15, 16, and authorities cited. Persons living in cities or other thickly settled communities must necessarily suffer some discomforts and annoyances from each other; but for these they are supposed to be fully compensated by the advantages incident to such communities.

*Exceptions overruled.*

CHASE, J., did not sit: the others concurred.