Belknap,
No. 5436.

H. THOMAS URIE & *a.*

*v.*

FRANCONIA PAPER CORPORATION.

Argued January 5, 1966.
Decided March 30, 1966.

*Upton, Sanders & Upton* ( *Mr. Richard F. Upton* orally ), for the plaintiffs.

*Orr & Reno* ( *Mr. Robert H. Reno* orally ), for the defendant.

WHEELER, J. This action is a bill in equity brought by H. Thomas Urie and fifteen others seeking to enjoin and restrain

the defendant from further pollution of the waters of the Pemigewasset River and that defendant be ordered to take such reasonable measures as may be required to abate the private nuisance resulting to the plaintiffs.

It is alleged in the petition that the plaintiffs are owners of real estate situated in the Bristol - New Hampton area in the valley of the Pemigewasset River. Certain of the plaintiffs are riparian owners of real estate bordering said Pemigewasset River. The defendant, Franconia Paper Corporation is engaged in the manufacture of pulp and paper products at Lincoln on or near the Pemigewasset River upstream from the lands of the plaintiffs.

It is further alleged that the defendant in the course of its manufacturing processes is and for several years has been discharging sulfite waste liquors, wood and pulp waste material and other pollution into the waters of said river, that the intensity and volume of such discharge has been increasing in the last three or four years and that the waste and pollution is and has been flowing downstream in said river through and past the land of the plaintiffs during this period.

Further, the petition alleges that in times of warm weather or low water conditions in the river the said wastes, solids and pollution by the time they have made their way downstream to a point near the lands of the plaintiffs, have worked, fermented or decayed to the point that they have become foul and offensive to human beings and there has thereby resulted the deposit of foul and offensive sludge and decayed matter in substantial quantities on the lands of those plaintiffs who are riparian owners. It is further alleged that during such warm weather periods the pollution of the waters by the defendant has caused the discharge of vile, obnoxious and offensive odors which have permeated the atmosphere on and near the lands and premises of the plaintiffs causing substantial and appreciable injury to the plaintiffs in their use and enjoyment of their property and rendering their enjoyment of their property uncomfortable and inconvenient.

The plaintiffs assert that the action of the defendant in the circumstances alleged is an unreasonable use of its premises and of the waters of the said Pemigewasset River and constitutes a private nuisance as to these plaintiffs and that such pollution by the defendant in the circumstances alleged is a constantly recurring grievance, day by day.

In their brief the plaintiffs advise that since the instant action

was instituted there has been determined and they will offer to prove that the odors discharged from the polluted river waters are hydrogen sulfide gas which is not only highly offensive to human beings but also attacks the lead-based paint on dwellings and other buildings in the vicinity causing them to turn black, and that the existence of this condition has also caused a substantial depreciation in property values of the plaintiffs which plaintiffs stand ready to prove.

The defendant in its answer makes a general denial of the allegation that its operations are polluting the Pemigewasset River and by way of affirmative defense alleges that the East Branch of the Pemigewasset River, in the towns of Lincoln and Woodstock, from the dam of the Franconia Paper Corporation to the confluence with the Pemigewasset River has been classified by the Legislature as Class D water and that the Pemigewasset River from its confluence with the East Branch of the Pemigewasset River in the town of Woodstock to the crest of the Eastman Falls Dam in Franklin has been classified by the Legislature as Class D water. Laws of 1959, 243:1, VII, VIII. See note following RSA 149:6.

The defendant further alleges that no order for abatement of pollution of the waters of the East Branch of the Pemigewasset River from the dam of the Franconia Paper Corporation to the confluence with the Pemigewasset River and of the Pemigewasset River from its confluence with the East Branch of the Pemigewasset River to the crest of the Eastman Falls Dam in Franklin may be entered prior to September 1, 1969. Laws of 1959, 243:2. Defendant's answer further alleges that if the waters of the Pemigewasset River are polluted as alleged by the plaintiffs such pollution has been caused by persons and municipalities other than by the defendant.

The plaintiffs demurred to the affirmative defense pleaded in the defendant's answer on the grounds that said defense as pleaded is not sufficient in law.

All questions of law raised by the plaintiffs' demurrer were reserved and transferred in advance of trial by *Griffith*, J.

The plaintiffs seek relief from a private nuisance, as landowners, and not as members of the public, specially damaged by a public nuisance. *Cf. St. Regis Co.* v. *Board*, 92 N. H. 164. A nuisance may simultaneously be a public and private nuisance. *McKinney* v. *Riley*, 105 N. H. 249, 254; *White* v. *Suncook Mills*,

91 N. H. 92, 97. See also, discussion in Restatement, Torts, *ss.* 217, 218.

It has been held by the weight of authority that what is authorized by law cannot be a public nuisance, but such authorization does not affect any claim of a private citizen for damages for injury "caused by the authorized act not experienced by the public at large, or for an injunction." 39 Am. Jur., "Nuisances," *ss.* 204, 205, *p.* 482. See also, *Commerce Oil Refining Corp.* v. *Miner*, 281 F. 2d 465 ( 1st Cir. 1960 ).

As the plaintiffs point out, there is nothing in RSA ch. 149 to indicate a legislative intent to take away any private rights of individual landowners to seek redress in equity to prevent pollution of the river. It seems doubtful if the Legislature has constitutional power to permit the defendant to continue to commit private nuisances until September 1, 1969, since such legislation would constitute taking private property for a non-public purpose. *Eaton* v. *Railroad*, 51 N. H. 504, 510; *Thompson* v. *Company*, 58 N. H. 108.

RSA ch. 149 is essentially an act to prohibit the pollution of public waters in the interest of protecting the public health and welfare. *State* v. *Goffstown*, 100 N. H. 131, 134; *Shirley* v. *Commission*, 100 N. H. 294, 299, 300. It was not intended to abrogate or suspend protection of the rights of individual landowners to be free from private nuisance.

The Class D classification is the "lowest classification" established by the statute, but even it is intended to permit "transportation of sewage or industrial wastes, or both, without nuisance." RSA 149:3 IV, *supra.* The provisions of Laws 1959, 243:2 allow a period of ten years within which to abate pollution which lowers the quality of the water below the Class D requirements. However, the language defining the classification as one which shall permit use "without nuisance" was not intended to sanction the continuance of a private nuisance in the meantime, or to suspend injunctive relief calculated to cause abatement of such a nuisance.

If, as the plaintiffs assert, the nuisance can be abated by appropriate measures short of the complete prohibition of pollution which the first prayer of their bill seems to seek, no reason appears why the employment of such measures may not be required by appropriate order prohibiting further pollution unless such measures are employed within a reasonable time. See Annot. 46 A.L.R. 8, 35, *par.* V. On the other hand, an unconditional

order which would require immediate cessation of all pollution of the waters in question may be entered if the private nuisance can be abated in no other way.

The allegations in the plaintiffs' petition state a cause of action for equitable relief.

The order is

*Plaintiffs' demurrer sustained; remanded.*

All concurred.