Carroll,
No. 6393.

Richard S. Robie, Sr., & a. v. Glenna M. Lillis & a.

December 29, 1972.

*James J. Kalled,* by brief and orally, for the plaintiffs.

*Devine, Millimet, Stahl & Branch, Matthias J. Reynolds* and *Richard E. Galway* (*Mr. Reynolds* orally) for the defendants.

KENISON, C.J. Appeal from a denial of a petition for abatement of an alleged nuisance in which the plaintiffs seek a permanent injunction restraining the defendants from maintaining a boat storage shed on a four-acre tract of land belonging to the defendants in the town of Tuftonboro, New Hampshire, near the shore of Lake Winnipesaukee.

Plaintiffs obtained a temporary injunction preventing further construction in December 1968 which was amended on two occasions before the full hearing. Prior to the hearing on the merits, the Judicial Referee (*John H. Leahy*), appointed pursuant to RSA 491:23 and RSA 493-A:1 (supp.), viewed the boat shed, several of plaintiffs' properties and the surrounding area. A full hearing was held before the referee who thereafter issued a decree denying the petition upon a ruling that no nuisance existed since the premises were being used for a reasonable purpose and in a reasonable manner. Plaintiffs seasonably excepted to the decree, to the denial of certain requests for findings and rulings, and to certain findings and rulings made by the referee. All questions of law raised by these exceptions were reserved and transferred to this court without ruling by the Superior Court (*Keller,* C.J.), pursuant to RSA 493-A:3.

Defendants operate a boat repair, rental and storage business about two miles from the boat storage shed in question which was constructed in 1968 to accommodate an increasing number of boats serviced by the defendants which required winter storage. During three months each spring the boats are from time to time taken out of storage and trucked out along a narrow road, and the reverse process occurs over a three-month period in the fall. Plaintiffs claim that the existence and operation of the boathouse constitute a nuisance because the shed is the first and only commercial struc-

ture in what is otherwise a quiet, rural and residential area and that it is a blight upon the otherwise unscarred landscape. In particular, plaintiffs allege that the "heavy" trucking in and out of the boats in the spring and fall will cause unreasonable noise and dust and hazards to playing and bicycling children and other persons traveling along the narrow access road. Plaintiffs further contend that the value of their properties will depreciate if the boathouse is allowed to remain and its operation is allowed to continue. Finally, it is claimed that the presence of oil and gasoline in the boats and elsewhere on the premises will create an unreasonable fire hazard to the surrounding properties.

The report of the judicial referee included the following findings and rulings: "The Town of Tuftonboro has no zoning laws or ordinances and the defendants are not in violation of any statutory law or ordinance. The referee finds that the trucking of boats to the boathouse in the Fall and to the corporation marina in the Spring does not of itself constitute an abatable nuisance; that hazard of children playing in the road does not constitute a nuisance in this case. Evidence concerning noise and dust was at a minimum, and it is found that noise and dust, if any, does not exist to a point where it is a nuisance.

"Evidence as to effect on surrounding land values was very scarce. [One witness] bought land in 1971 on Tuftonboro Neck and expects to develop it and 'make a profit.'

"There was evidence from the plaintiffs that the boat storage house constituted a fire hazard because there was always some gasoline around or in the boats, as it was hard to get it all out when storing a boat.

"It is found that the land values near the boathouse have not deteriorated by reason of the boathouse being where it is. The fire hazard complained of appears to be no greater than exists in any storage place where gasoline is present. It is noted that there is a fire department located within one mile of the boat building.

"Upon consideration of all the evidence, it is found that the boat storage building . . . does not constitute a public or private nuisance by being where it is or because of its use to store boats. It is further found that the defendants are

using the premises involved for a reasonable purpose and in a reasonable manner. It is recommended that the temporary injunction be terminated and the request for a permanent injunction be denied."

Plaintiffs have alleged that the boathouse constitutes both a public and a private nuisance. Prior decisions of this court make it clear that a private nuisance may be defined as an activity which results in an unreasonable interference with the use and enjoyment of another's property. *See Webb* v. *Rye,* 108 N.H. 147, 230 A.2d 223 (1967); *Urie* v. *Franconia Paper Co.,* 107 N.H. 131, 218 A.2d 360 (1966); *Proulx* v. *Keene,* 102 N.H. 427, 158 A.2d 455 (1960); *Lane* v. *Concord,* 70 N.H. 485, 49 A. 687 (1900). *See generally* 6-A American Law of Property *s.* 28.22 (A.J. Casner ed. 1954); Prosser, Torts *s.* 89 (4th ed. 1971); Restatement (Second) of Torts *s.* 822, at 22 (Tent. Draft No. 17, 1971). A public nuisance, on the other hand, is "an unreasonable interference with a right common to the general public." Restatement (Second) of Torts, *supra s.* 821B(1), at 3. It is behavior which unreasonably interferes with the health, safety, peace, comfort or convenience of the general community. 6-A American Law of Property, *supra s.* 28.23, at 68; Restatement (Second) of Torts, *supra s.* 821B(2) (a); *see Urie* v. *Franconia Paper Co.,* 107 N.H. 131, 218 A.2d 360 (1966); *McKinney* v. *Riley,* 105 N.H. 249, 197 A.2d 218 (1964); *White* v. *Suncook Mills,* 91 N.H. 92, 13 A.2d 729 (1940). Conduct which unreasonably interferes with the rights of others may be both a public and a private nuisance (*Urie* v. *Franconia Paper Co. supra;* Restatement (Second) of Torts, *supra s.* 821B, Comment *h* at 9-10), and both actions involve an analysis of similar considerations. Restatement (Second) of Torts, *supra s.* 821B, Comment *e* at 6.

Essential to a finding of either a public or a private nuisance is a determination that the interference complained of is substantial. *Proulx* v. *Keene,* 102 N.H. 427, 158 A.2d 455 (1960); *Page* v. *Brooks,* 79 N.H. 70, 104 A. 786 (1918); *Lane* v. *Concord supra;* Prosser, *supra s.* 87, at 577; Restatement (Second) of Torts, *supra s.* 821B(2) (c), *s.* 821 (F) at 54 (Tent. Draft No. 16, 1970), and *s.* 829A at 4 (Tent Draft No. 18, 1972). "Substantial harm is that in excess of the customary interferences a land user suffers in an organized society.

It denotes an appreciable and tangible interference with a property interest." 6-A American Law of Property, *supra s.* 28.25, at 73. However, "[n]ot every intentional and substantial invasion of a person's interest in the use and enjoyment of land is actionable . . . Life in organized society . . . involves an unavoidable clash of individual interests. Practically all human activities . . . interfere to some extent with others or involve some risk of interference . . . . [E]ach individual in a community must put up with a certain amount of annoyance, inconvenience and interference, and must take a certain amount of risk in order that all may get on together . . . . [T]he law of torts does not attempt to impose liability . . . in every case where one person's conduct has some detrimental effect on another. Liability is imposed only in those cases where the harm or risk to one is greater than he ought to be required to bear under the circumstances . . . . [T]he law has developed a . . . rule of liability for intentional invasions . . . [which] requires that an intentional invasion be unreasonable before one is liable for causing it." Restatement (Second) of Torts, *s.* 822, Comment *g* at 27-28 (Tent. Draft No. 17, 1971). This requirement of a finding of unreasonableness is the crux of the law of nuisance. *Webb* v. *Rye,* 108 N.H. 147, 230 A.2d 223 (1967); *Lane* v. *Concord supra; Ladd* v. *Brick Co.,* 68 N.H. 185, 37 A. 1041 (1894); Prosser, *supra s.* 89, at 596.

The proper consideration of all the relevant circumstances involves a balancing of the gravity of the harm to the plaintiff against the utility of the defendant's conduct, both to himself and to the community. *Proulx* v. *Keene,* 102 N.H. 427, 158 A.2d 455 (1960); 6-A American Law of Property, *supra s.* 28.26, at 75-76; Restatement of Torts *ss.* 826-31 (1939). *See also Webb* v. *Rye supra.* "In general, conduct will be unreasonable only when its utility to the actor and to the public is outweighed by the gravity of the harm that results." 6-A American Law of Property, *supra s.* 28.22, at 66. This same weighing process is involved in determining the appropriateness of injunctive relief once a nuisance has been found to exist (*Crocker* v. *Caanan College,* 110 N.H. 384, 388, 268 A. 2d 844, 847 (1970); *Webb* v. *Rye supra;* 6-A American Law of Property, *supra s.* 28.35, at 97; Restatement of Torts, *supra*

*s.* 941), although the scales must weigh more heavily in the plaintiff's favor because of the extraordinary nature of this form of relief. *See Ferguson* v. *Keene,* 111 N.H. 222, 225, 279 A.2d 605, 607-08 (1971); *Riter* v. *Keokuk Electro-Metals Co.,* 248 Iowa 710, 82 N.W.2d 151 (1957); *Boomer* v. *Atlantic Cement Co.,* 26 N.Y.2d 219, 309 N.Y.S.2d 312, 257 N.E.2d 870 (1970); Restatement of Torts, *supra s.* 941, at 711-12. *See generally* Annot., 40 A.L.R.3d 601 (1971).

It is clear in this case that the judicial referee correctly applied these tests in determining that the defendants' use of the boat shed was reasonable. The record fully supports the conclusion that the harm, if any, inflicted upon the plaintiffs from the existence and operation of the boathouse is neither substantial nor unreasonable.

The only evidence bearing on the claim that the shed would be a fire hazard was an admission by one of the defendants that all gas and oil could never be entirely removed from all of the boats and an assertion from one of the plaintiffs that gasoline can be a potent explosive under certain circumstances. This is plainly insufficient to establish a nuisance. The fact that the boats are housed in an aluminum shed which is located on a four-acre field dispels any remaining substance to this contention. Even the storage of gasoline and oil in large quantities constitutes a nuisance only when the hazard to adjoining property owners is substantial. *Hilliard* v. *Shuff,* 260 La. 384, 256 So.2d 127 (1971). *See also Frazier* v. *Chambers,* 228 Ga. 270, 185 S.E.2d 379 (1971); *Erie* v. *Gulf Oil Corp.,* 395 Pa. 383, 150 A.2d 351 (1959). No substantial hazard was shown in this case.

Evidence on the claim of a depreciation in land values was scarce and conflicting. Furthermore, this argument is ordinarily accorded little weight by the courts in nuisance cases on the ground that the law cannot generally protect landowners from fluctuating land values which is a risk necessarily inherent in all land ownership. *See Nicholson* v. *Connecticut Half-Way House, Inc.,* 153 Conn. 507, 218 A.2d 383 (1966); *Smith* v. *Western Wayne County Conservation Ass'n,* 380 Mich. 526, 158 N.W.2d 463 (1968); *Young* v. *St. Martin's Church,* 361 Pa. 505, 64 A.2d 814 (1949); 6-A American Law of Property, *supra s.* 28.22, at 67.

There was similarly insufficient evidence to support a finding of nuisance from increased hazards to children playing in the street, the only evidence on this point being testimony that children lived and played along the road traveled by the defendants' trucks. Nor was there evidence to support a finding that the trucks would create an unreasonable amount of dust or noise. *Stegner* v. *Bahr & Ledoyen, Inc.,* 126 Cal. App. 2d 220, 272 P.2d 106 (1954). *See generally* Note, Noise Nuisances: Commercial Enterprises v. Owners of Residential Property, 7 Vand. L. Rev. 695 (1954); Annot., 24 A.L.R.2d 194 (1952). The authorities cited by plaintiffs concerning truck noise as a nuisance involve nighttime operations substantially interfering with people's sleep unlike this case where there was undisputed testimony that the trucks only travel during the normal working day. *E.g., Fox* v. *Ewers,* 195 Md. 650, 75 A.2d 357 (1950); *cf. Aldridge* v. *Saxey,* 242 Ore. 238, 409 P.2d 184 (1965). Increased traffic or trucking generally is not a ground for injunctive relief (*Smith* v. *Western Wayne County Conservation Ass'n supra*), and the plaintiffs would have had to prove, as they did not, an unreasonable interference with their use of the road or with their ingress or egress from their properties. *Graves* v. *Shattuck,* 35 N.H. 257 (1857); *Stegner* v. *Bahr & Leyoden, Inc., supra.*

We think that plaintiffs' final and strongest contention that the boat storage shed should be excluded from the otherwise "residential" neighborhood because of its commercial and "unsightly" nature cannot be accepted. A review of the photographs and other evidence in the case indicates that there is no legal basis for the allegation that the shed is unsightly. True, it is not a lovely Georgian edifice of exquisite charm. However, the law has traditionally trod with utmost caution in declaring a structure unsightly, and far greater unattractiveness than was shown here must be established before the law will require its destruction. *See Obrecht* v. *National Gypsum Co.,* 361 Mich. 399, 105 N.W.2d 143 (1960); 6-A American Law of Property, *supra s.* 28.22, at 67-68. This is not to say, however, that the unaesthetic quality of an activity is not an important consideration in the balancing process involved in the determination of its reasonableness under all the circumstances. *See Gerrish* v. *Wishbone Farm,*

108 N.H. 237, 231 A.2d 622 (1967); *Obrecht* v. *National Gypsum Co., supra,* 361 Mich. at 417-18, 105 N.W.2d at 151-52 (1960). *See generally* Note, Aesthetic Nuisance: An Emerging Cause of Action, 45 N.Y.U.L. Rev. 1075 (1970).

A nuisance may undoubtedly arise from a land use incompatible with the surrounding neighborhood. Mandelker, The Role of Law in the Planning Process, 30 Law & Contemp. Prob. 26 (1965). "A nuisance may be merely a right thing in the wrong place, — like a pig in the parlor instead of the barnyard." *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 388, 71 L. Ed. 303, 311, 47 S. Ct. 114, 118 (1926); *Catalfo* v. *Shenton,* 102 N.H. 47, 49, 149 A.2d 871, 873 (1959). A person ordinarily has a valid expectation that an established, closely-settled neighborhood or subdivision will remain exclusively residential. However, the validity of that expectation is substantially weakened where the locality is "pastoral and rural" with large tracts of vacant land as in the instant case. *See Aldridge* v. *Saxey,* 242 Ore. 238, 243-44, 409 P.2d 184, 187-88 (1965); *Wade* v. *Fuller,* 12 Utah 2d 299, 365 P.2d 802 (1961); Beuscher and Morrison, Judicial Zoning Through Recent Nuisance Cases, 1955 Wis. L. Rev. 440, 444-51.

Plaintiffs urge that in this day of increased ecological concern we should broaden the existing boundaries of the law of nuisance to fill in the gap where environmental and zoning legislation leaves off. We are of the opinion, however, that the traditional nuisance analysis performs just that function admirably well and would be exceptionally difficult to improve upon. We have taken care to outline the basic structure of the law of nuisance to demonstrate that the present rules which resolve conflicting land uses upon an analysis of the unreasonableness and substantiality of a person's interference with another's rights are flexible, equitable and well adapted to the problem. When plaintiffs fail to obtain relief as in the instant case, it is because the interference complained of has not been shown to be substantial or unreasonable under all of the circumstances. It does not appear unreasonable to us to locate a boat storage shed on a four-acre tract of land in a rural albeit "residential" locality which depends in part for its economic livelihood on boating and other recreational activities.

We have reviewed the testimony and examined the exhibits, including photographs of the boat shed and the surrounding area, and we conclude that the findings and rulings of the judicial referee are amply supported by the record and consistent with the law of nuisance as developed and applied in this State.

*Exceptions overruled.*

All concurred.