J. E. HORSTICK v. J. A. DUNKLE ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY.

Argued June 2, 1891—Decided January 4, 1892.
[To be reported.]

1. A landowner maintaining an unfenced pond, distant fifteen feet from the edge of a highway, and twenty-seven feet from the traveled track, is not liable to a traveler, whose horse, becoming uncontrollable through fright not chargeable to such landowner, leaves the highway and carries him into the pond, for injuries thus caused: Gramlich v. Wurst, 86 Pa. 74; Gillespie v. McGowan, 100 Pa. 144.

2. A landowner, who, by permission of the sequestrator of a turnpike company, alters the grade of the road upon his land, assumes the duty of the company in regard to making the road, as thus altered, suitable and safe for public travel; and for a neglect to perform such duty, he will be liable to the same extent as the company itself.

3. While the cases in Pennsylvania hold townships and corporations, charged with the care of the public highways, to a more exacting rule than obtains in some other states, in instances where the element of an unruly or frightened horse enters into the causes of an accident, none of them go so far as to say that roads must be made safe for runaway horses.

4. The circumstance that a horse becomes uncontrollable through fright, not chargeable to the officers of the township or corporation, neither adds to nor takes away from the rights which the driver would have without it; in either case, the question is whether the road was in a condition making it suitable and sufficient for public travel conducted in the ordinary manner.

(a) The defendants owned the land on each side of a turnpike road. North of the road, was a dam used as an ice pond, the breast of which was fifteen feet away from the edge of the road, and separated from it by a fence. The top of the dam was eight feet higher than the road. By permission of the sequestrator of the road, defendants filled it up, raising it to the level of the dam.

(b) In making the fill, the width of the roadway was somewhat contracted on the south side. Defendants also removed the fence, and filled up the ground between the road and their dam to the level of the latter. After these changes, the traveled part of the road was twenty-seven feet from the edge of the pond. A line of telegraph poles stood along the northern edge of the road.

(c) While the plaintiff was driving along the road after dark, his horse became uncontrollable, through fright from some unknown cause, and

rushed into the pond, where the plaintiff received personal injuries. The plaintiff brought an action for his injuries against the defendants, charging negligence on their part in failing to erect a barrier between the road and the pond:

5. The roadbed itself being without defect, and there being nothing, apart from the fright of the horse, to show any danger to travel from the existance of the pond and the absence of a fence between it and the road, the jury should have been instructed that there was no sufficient evidence on which to hold the defendants liable: Plymouth Tp. v. Graver, 125 Pa. 24, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ. ,

No. 19 May Term 1891, Sup. Ct.; court below, No. 22 March Term 1890, C. P.

On January 17, 1890, John E. Horstick brought trespass against J. A. Dunkle and J. B. Ewing, to recover for personal injuries averred to have been caused by negligence of the defendants. The defendants pleaded not guilty.

At the trial, on November 18, 1890, the following facts were shown :

The Downingtown, Ephrata & Harrisburg Turnpike Company was incorporated by act of March 24, 1803, P. L. 441, to build a turnpike road fifty feet in width. The company constructed its road over land adjacent to the city of Harrisburg, which afterwards became the property of the defendants, laying it across a small stream running through the land. Some years before the defendants purchased the property, a former owner built a dam across the stream, north of the turnpike, forming a pond used to obtain ice for the supply of residents of Harrisburg. The breast of the dam was fifteen feet from the edge of the road, and twenty-seven feet from the traveled portion thereof. The top of the embankment was eight feet above the level of the roadway, and about twelve to thirteen feet above the bottom of that part of the pond next to the dam breast. The road was separated from the ground lying between it and the dam by a fence. On the southern edge of the road stood an ice house, in which the ice gathered from the pond was stored.

For some years prior to 1888, the road was in the hands of a sequestrator. In that year, the defendants obtained his per-

Charge of Court below.

mission to alter its grade by making a fill through their land. Under such license, they filled it up eight feet in front of their dam, so as to bring its surface to about or slightly above the level of the top of the embankment forming the dam. They also filled up the intervening space, so as to make a practically level surface over the whole distance between the traveled roadway and the top of the dam. In doing so, they removed the fence which had stood on the northern edge of the road, and this was not replaced. In making the fill in the road, they reduced its width upon the southern side, to the extent of the space occupied by the slope, and, in addition to this, by leaving a space fifteen to twenty feet in width between the bottom of the slope and the southern edge of the road. Upon that side of the fill made in the road, a fence was constructed. The defendants properly macadamized the surface of the roadway, as filled up by them, making a smooth and level wagon way twenty to twenty-five feet in width, along the northern edge of which, twenty-seven feet from the dam, stood a line of telegraph poles.

On March 23, 1889, between seven and eight o'clock, P. M., the plaintiff was driving along the turnpike road. He was entirely familiar with it, and with the dam. When nearly opposite the dam, his horse became frightened from some cause unknown, and got beyond his control, left the road, and ran into the pond with the vehicle in which the plaintiff was riding. As the result of this, the plaintiff received the injuries complained of in this action. Soon after the accident to the plaintiff, the defendants built a fence along the breast of the dam.

The testimony being closed, the court, SIMONTON, P. J., charged the jury in part as follows:

If you find that the plaintiff was negligent, that would be the end of the case, and you would not need to consider anything further. If you find that he was not negligent, that the accident did not happen through his want of care, in driving the horse, or in keeping hold of the reins, or in any other matter, then you must go to the further question, whether the defendants were or were not negligent?

As to the defendants, it appears from the uncontradicted evidence in the case, that by permission of the person who, at

the time, was the sequestrator of the turnpike company, they raised the grade of the turnpike at the point in question, so as to make it practically level with the breast of the dam, while before that time it was some eight feet, more or less, below it; and it would seem that, as the road originally was before they raised it, it would have been practically impossible for an accident of this kind to have happened. . . . .

The raising of this road was done with the permission of the sequestrator; and we do not think it is necessary for us in this case to go into a critical examination of what right or authority the sequestrator had to change the grade of the road.  He was appointed for the purpose of taking into his hands the income or earnings of the road, in order that it might be applied to the debts of the corporation.  But he gave this permission, and we will assume that they were not, in the strict sense of the word at least, trespassers when they raised the grade, and that the obligation resting upon them was simply to do what they did do in a careful and prudent manner, without negligence.  It is a question then for you, using your sound judgment, and applying it to the facts of the case as they have been developed in the testimony, and which no doubt are entirely clear and distinct in your recollection, so that it is not necessary for us to review them, to determine whether, as persons of ordinary prudence, care and judgment, it was the duty of these defendants to put any protection between the road and the pond, in order to prevent an accident of this kind.  If it was their duty, if failure to do it was negligence as defined to you, then they would be liable for the consequence of not doing it, and then you would have to determine whether the accident in this case was a consequence of their failure to do it.

[It does not appear in the testimony what occasioned the fright of the horse.  That, however, is not important in the case.  As a matter of fact, the horse did frighten and he did run into this pond; and, as we have already said, you will have to consider whether the accident was occasioned by the defendants' negligence.  Use your judgment, then, on that point; apply it to the facts, and determine whether, under the circumstances of the case as appears from the evidence, it was negligence on the part of the defendants not to put some barrier or protection there.  If you find that it was not negligence,

Charge of Court below.

then, of course, there would be no recovery. In determining that point, you will have to consider the relative location of the road and the pond. To illustrate ; suppose that pond had been five hundred yards away ; it might be very clear that, under those circumstances, they would not have been bound to put up any barrier. Suppose it had been two feet from the edge of the road, it might be easy to determine whether they ought or ought not to put up a barrier. In this case, I believe the testimony is that it was some fifteeen feet from the edge of the road, and some distance, twenty-seven feet, I believe, from the part of the road used as a driveway. You will have to take those distances into consideration, in determining whether it was negligent to fail to put any barrier in the way of a horse passing from the road to the pond. You ought to consider in that connection, also the question as to the nature of the pond itself, whether it was dangerous, more or less, to get into it. The greater the danger to be apprehended from animals getting into it, the greater would be the necessity of guarding against it. The greater the danger to be guarded against, the greater degree of care is required of those who have any duty at all in the matter ; and, therefore, you ought to consider how great the danger was, resulting from the conformation of the pond and the bank, etc.] [1] . . . .

The plaintiff has asked us to instruct you :

2. It appearing that the road in question at the point where the accident occurred, passes through a thickly settled locality and is constantly and frequently traveled, the measure of duty in respect of the care required in keeping it in a reasonably safe condition for public travel, is greater than in the case of an ordinary country road through a farming region.

Answer : That point is drawn in the present tense ; and it appears from the evidence that there has been a considerable change in the thickness of the settlement between the time when this accident occurred and the present time. We, therefore, answer that point in this way : If the facts stated in the point are found to have existed at the time of the accident, the measure of duty stated in the point is correct.[6]

3. If the jury believe that the locality is such that the existence of the dam, in connection with other circumstances, such as the sudden frightening of the plaintiff's horse, rendered the

Charge of Court below.

road at that point a place of peril and danger, the defendants, having undertaken to change the grade so as to bring it on a level with the dam, were bound to do whatever was reasonable and practicable, in the erection of barriers to avert any danger which might be incident thereto.

Answer: To that we say, that the point is affirmed so far as any peril and danger were caused by the acts of the defendants in changing the road.[7]

The defendants have asked us to instruct you as follows:

3. If the jury find that the embankment of defendants' dam or ice pond, in which the plaintiff alleges he was injured, was situated a distance of fifteen feet outside the limits of the public road, and a distance of twenty-five feet or more from the distinctly marked track or driveway of said road, and that said embankment was on a level with, or slightly below, the public road, the defendants were not bound to protect travelers from injury, by erecting a guard along or in front of said embankment.

Answer: That instruction is refused. We have told you, already, that it is your province and duty, under all the circumstances, to determine the question whether or not the defendants were bound to put up some protection.[2]

4. That there is no evidence tending to show that the embankment of the defendants' dam or pond was located so close to the public road, or in such dangerous proximity to the same, as to make the public road unsafe to a traveler using ordinary care; nor to make it the duty of the defendants to erect a railing or guard for the protection of persons using the public road.

Answer: That, also, is refused for the same reason. It is a question for the jury.[3]

5. If the plaintiff's horse, by reason of sudden fright, escaped from the control of the plaintiff, who was driving him, and left the public road at a place where there was no defect in the same; and, before the plaintiff could regain his control, the horse ran a distance of fifteen feet or more, on a level or down a slight grade across defendants' land to their dam or pond, where the plaintiff received injuries, the plaintiff cannot recover in this action, unless it appears that the original

fright of the horse was caused by the wrongful or negligent act of the defendants.

Answer: That is refused. It is possible that might be the law in Massachusetts, and in some of the other New England states. It is perhaps in accordance with some of the authorities cited by counsel for the defendant, but it is not the law in the state of Pennsylvania. The fact that the horse had gotten beyond the control of the driver, and was beyond his control at the time the injury was done, is no reason why the plaintiff cannot recover in Pennsylvania.[4]

6. If the jury find from the evidence that the plaintiff was driving or managing his horse unskilfully, at the time of the accident, and such unskilfulness contributed to the injury received by him, the plaintiff cannot recover.

Answer: That point is refused, because of the use of the word "unskilful." The law does not require every person to be skilful, in the strict sense of the term. If the plaintiff was driving his horse carelessly or negligently, and the accident was the result of that, then he would not be entitled to recover.[5]

7. That if the plaintiff's horse by reason of viciousness or fright became actually uncontrollable, so that the plaintiff could not stop him or direct his course, or exercise or regain control over his movements, and in this condition traveled a distance of thirty feet or more over level or but slightly descending ground before the plaintiff sustained any injuries, the plaintiff cannot recover.

Answer: That is refused.

—The jury returned a verdict for the plaintiff for $600. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal, assigning for error:

1. The part of the charge embraced in [   ][1]

2-5. The answers to defendants' points.[2 to 5]

6, 7. The answers to plaintiff's points.[6 7]

*Mr. Edwin W. Jackson*, for the appellants:

The defendants' dam was legally and physically an excavation on their own land, and the case is to be treated as if the excavation had been made after the road was raised to its present grade. Was it such an excavation as the defendants were bound to guard?

Arguments

1. A landowner may leave an excavation on his own land unguarded, unless it is so near to a highway as to amount to a public nuisance : Hounsell v. Smyth, 7 C. B., N. S., 743. To make it his duty to erect a guard, it must adjoin the public way ; so that persons by making a false step, or by the sudden starting of a horse, might be thrown into it while lawfully using the highway: Hardcastle v. Railway Co., 4 H. & N. 67 ; Binks v. Railway Co., 3 B. & S. (113 E. C. L.) 244 ; Hadley v. Taylor, L. R. 1 C. P. 53 ; Gramlich v. Wurst, 86 Pa. 74 ; Gillespie v. McGowan, 100 Pa. 144. The rule laid down by these cases is recognized by all American courts, so far as we are advised, except the Supreme Court of Massachusetts, which ruled somewhat differently in Howland v. Vincent, 10 Metc. 371, and McIntire v. Roberts, 149 Mass. 450. Unless the doctrine of the Hardcastle case be overthrown in Pennsylvania, this judgment must be reversed.

2. The court below proceeded, apparently, upon the theory that the defendants must be held to the same standard of responsibility as if the suit were brought against the party responsible for the condition of the highway. This is not the true standard. However, we cite decisions defining the responsibility of municipalities in analogous cases : Murphy v. Gloucester, 105 Mass. 470 ; Warner v. Holyoke, 112 Mass. 362 ; Alger v. Lowell, 3 Allen 402 ; Commonwealth v. Wilmington, 105 Mass. 599 ; Sparhawk v. Salem, 1 Allen 30 ; Plymouth Tp. v. Graver, 125 Pa. 36. From these cases, it appears that the plaintiff could not recover against the turnpike company, unless the defect which caused his injury was in the highway, or so immediately contiguous to it as to render travel on the highway itself dangerous ; or, at least, the place of danger must be in such proximity to the highway, as traveled, that the danger is practically the same as if it were contiguous.

3. Municipalities are not bound to make their roads so that travelers shall be safe when their horses are frightened, unmanageable, or running away: Titus v. Northbridge, 97 Mass. 258 ; Moulton v. Sanford, 51 Me. 127 ; Nichols v. Athens, 66 Me. 402 ; Houfe v. Fulton, 29 Wis. 296 (9 Am. Rep. 568) ; Ring v. Cohoes, 77 N. Y. 83 (33 Am. Rep. 574) ; Plymouth Tp. v. Graver, 125 Pa. 36 ; Hey v. Philadelphia, 81 Pa. 44. That the plaintiff, if his horse had not been unmanageable and

running away, could not have been injured without clear negligence on his part, is an element of the case which weighs in favor of the defendants, in applying the doctrine of Hardcastle v. Railway Co., supra, and the defendants' fifth point should have been affirmed. The sixth point of defendants is a correct statement of the law: Shearman & Redf. on Negl., § 417; Peoria Bridge Ass'n v. Loomis, 20 Ill. 235 (71 Am. Dec. 263.) And the answer to plaintiff's second point erroneously instructed the jury, by inference at least, that defendants were responsible for the condition of the road itself; moreover, there was no evidence of any defect in the road.

*Mr. Robert Snodgrass*, for the appellee:

1. Substantially but one question is discussed by appellants counsel, to wit, was the court right in permitting the jury to determine whether the defendants were guilty of negligence in not erecting barriers or guards along the front of their dam? We do not say that they were bound to do this, simply because the road happened to be within fifteen feet of their dam. The distance was only one of the elements entering into the situation; and in order to determine the question of negligence fairly, it was necessary to consider, also, all that was done by the defendants in changing the grade, in narrowing the road, and in subsequently erecting a fence for the purpose of preventing such accidents as happened to the plaintiff.

2. When the defendants undertook to raise the roadbed as they did, even if they had the legal right to do this, which we deny, it became their duty to reconstruct the road as wide at least as it had previously been. This they did not do. Taking everything done by them together, they created a situation such that it was not only possible but probable that accidents would occur, and the duty of the court to submit the question of negligence to the jury is so plain, that its discussion would be a work of supererogation. It was for the jury to determine, on all the facts and circumstances, the measure of defendants' duty: McCully v. Clarke, 40 Pa. 399; West Chester etc. R. Co. v. McElwee, 67 Pa. 311; Crissey v. Railway Co., 75 Pa. 83; Fritsch v. Allegheny City, 91 Pa. 226; Baker v. Fehr, 97 Pa. 70; Plymouth Tp. v. Graver, 125 Pa. 24; Burrell Tp. v. Uncapher, 117 Pa. 353; Hey v. Philadelphia, 81 Pa. 44; Shaw v. Railroad Co., 150 Mass. 182.

Opinion of the Court.

3. It was by the defendants, not by the turnpike company, that this accident was made possible. But, even if the company were negligent, this would be no answer to the action against the defendants : Burrell Tp. v. Uncapher, 117 Pa. 353. The main reliance of the defendants seems to be upon the case of Hardcastle v. Railway Co., 4 H. & N. 67. An examination of its facts will show that they were entirely different from those of the case in hand ; the distinction is clearly pointed out in Gillespie v. McGowan, 100 Pa. 144. The fourth assignment of error is intended to raise a question as to the proximate cause of the injury. The cases cited in support of it are not in accordance with the law of Pennsylvania ; and a sufficient answer to the sixth assignment is found in Jackson Tp. v. Wagner, 127 Pa. 184.

OPINION, MR. JUSTICE MITCHELL:

The learned judge below laid down very clearly and accurately the general rules applicable to cases of accidents through alleged defects in the public roads, and the only substantial question before us is whether, on the admitted or undisputed facts, there was sufficient evidence of negligence on the part of defendants to go to the jury.

The rule as to excavations, or other sources of danger by an owner of land in the vicinity of a public road, was stated in Gramlich v. Wurst, 86 Pa. 74, and Gillespie v. McGowan, 100 Pa. 144, and need not be enlarged upon here. On the admitted facts of this case, the defendants would not have been liable merely as owners of the pond. But defendants, having altered the road by agreement or license from the turnpike company, through the receiver, assumed the duty of the company in that regard, and the case must be considered in the light of the duty of the company if it had made the change itself.

The precise limits of liability where the element of an unruly or frightened horse enters into the causes of an accident on a public highway, have been the subject of controversy and some difficulty. It is conceded that our cases hold the township authorities to a more exacting rule than obtains in some other states, but none of them go so far as to say that they must make the roads safe for runaway horses. The subject was carefully considered in the recent case of Jackson Tp. v. Wagner, 127 Pa. 184, where our Brother WILLIAMS said :

Opinion of the Court.

" Township officers are bound to anticipate and provide against the ordinary needs of travel conducted in the ordinary manner, . . . . . but are not bound to anticipate the danger to which a broken wagon or a frightened horse may expose the driver." And again : " It is necessary to inquire whether the accident was the natural or probable result of any act or omission of the township officers, which rendered the highway unsafe for the purposes of travel, conducted in the ordinary manner and by the ordinary means of conveyance. If it was, then the plaintiff ought to recover, and the fright of her horse, the breaking of her wagon, and her inability to guide her frightened animal, should not stand in the way of her recovery. These circumstances do not confer on her any rights she would not have possessed without them, nor give her any higher claim on the care of the township officers. On the other hand, they do not take from her any right to which she, in common with other travelers, was entitled in the use of the highway. It is the condition of the highway, therefore, and not the succession of accidents that befell the plaintiff, to which the attention of the jury should have been held. Was the road on that day and at that place in a condition that made it a suitable and sufficient road for public travel conducted in the ordinary manner ? "

The criterion here laid down was reaffirmed in the same case, 133 Pa. 61, and must be considered the settled law.

Tested by this rule, it is clear that there was no sufficient evidence of negligence to take this case to the jury. There was no defect in the roadbed. It was level, and safe for ordinary travel. The edge of the pond was fifteen feet outside the line of the turnpike, and twenty-seven feet from the traveled part of the road, which was to some extent separated and distinguished from the part adjoining the pond by a line of telegraph poles. The cause of the horse's fright is unknown, but there was no evidence that it was from anything on or connected with the road or with the pond. Apart from the fright of the horse, there was nothing to show any danger to travel from the existence of the pond and the absence of a fence between it and the road. It is in this respect that the present differs from the line of cases of which Plymouth Tp. v. Graver, 125 Pa. 24, is the exemplar. There, as here, the roadbed was

Opinion Dissenting.

without defect, but it was along and immediately adjacent to the tracks of the railroad, where the passage of trains had a natural tendency to frighten horses. The road, therefore, as it existed, contained the elements of danger to ordinary travel; and this court held that it was the duty of the township to anticipate and provide against such danger. The element of danger to ordinary travel is wanting in the present case; and therefore the jury should have been instructed that there was no sufficient evidence on which to hold the defendants liable.

　　　　　　　　　　　　　　　　　　　Judgment reversed.

Mr. Justice STERRETT, dissenting:

The facts necessary to an understanding of the questions involved in this contention are so fully presented in the charge of the court that a brief reference to them will be sufficient.

It appears that a small stream, running through defendants' land, several feet below the general level of the turnpike on which plaintiff was driving, formerly crossed the road at grade, near the point where the accident occurred. About fifteen years ago, the then owner of the land constructed an embankment or dam about eight feet high across the stream, on the northerly side of the turnpike and about fifteen feet therefrom, for the purpose of collecting the water, and thus forming an ice pond. On the south side of the road there was an ice house, and on the north a fence separating the road from the dam. While the embankment or dam remained thus about eight feet higher than the road, and separated from it by the fence, an accident, such as is the subject of this controversy, was practically impossible. In 1888, after defendants purchased the land, they obtained permission from the sequestrator of the turnpike company to raise the grade of the road at the point referred to, and in pursuance thereof they filled in about eight feet, turnpiked the new surface, constructed a culvert for the subterranean passage of the stream, and thus raised the road and their own land between it and the dam, to the level of the latter. The fence was of course removed. It was never rebuilt, nor was there any guard-rail put upon that side of the road. On the opposite side, the width of the road was somewhat contracted by the slope of the filling in, etc. In brief, the situation at the time of the accident was a somewhat narrower roadway

for travel; the ice pond, on defendants' land, about fifteen feet from the turnpike, and nearly level therewith; and a line of telegraph poles, about twelve feet within the line of the road on same side.  The depression formerly existing in the turnpike, at the point where the stream crossed, was filled to about the general level of the adjacent portions of the road and top of the ice pond embankment.

The facts above outlined were either undisputed, or supported by evidence from which a jury would have no difficulty in finding them.

In March, 1889, while plaintiff was driving on the turnpike, at the point above described, his horse suddenly frightened, and, turning aside, ran into the ice pond, and plaintiff was badly injured.  His contention is that the cause of his injury was the negligence of the defendants, which consisted not so much in their removing the natural and artificial barriers by which travelers on the turnpike were previously protected, and in so changing the situation that they were exposed to danger, as in their omission to make any provision for guarding against the danger that was created by their acts.

In that part of his charge recited in the first specification, and in his answers to points quoted in the second, third, fourth, and seventh pecifications, respectively, the learned judge submitted the question of defendants' negligence to the jury, under all the evidence.  In affirming plaintiff's third point, he in effect instructed the jury in the language thereof, that, "if they believe the locality is such that the existence of the dam, in connection with other circumstances, such as the sudden frightening of the plaintiff's horse, rendered the road at that point a place of peril and danger, the defendants, having undertaken to change the grade so as to bring it on a level with the dam, were bound to do whatever was reasonable and practicable in the erection of barriers to avert any danger that might be incident thereto."  The principle asserted in this point was explained and elaborated in the general charge, especially in the portion thereof that is embraced in the first specification.  It was further emphasized in the refusal to charge, as requested by defendants, that they "were not bound to protect travelers from injury, by erecting a guard along or in front of said embankment" or dam, and saying to the jury in

Opinion Dissenting.

lieu thereof: "It is your province and duty, under all the circumstances, to determine the question whether or not the defendants were bound to put up some protection." If, under all the circumstances disclosed by the testimony, that question was one of fact for the jury, and not a question of law for the court, there was no error in the instructions complained of, and the judgment should be affirmed.

Sometimes it is not very easy to draw the line of distinction between questions that are exclusively for the jury and those that are properly for the court, but in this case we think it was correctly done in accordance with established principles. In West Chester etc. R. Co. v. McElwee, 67 Pa. 311, it is said:

"The law is well settled that what is and is not negligence in a particular case, is generally a question for the jury, and not for the court. It is always a question for the jury when the measure of duty is ordinary and reasonable care. In such cases, the standard of duty is not fixed, but variable. Under some circumstances, a higher degree of care is demanded than under others; and when the standard shifts with the circumstances, it is in its very nature incapable of being determined as matter of law, and must be submitted to the jury, to determine what it is, and whether it has been complied with. But when the standard is fixed, when the measure of duty is fixed by law, and is the same under all circumstances, its omission is negligence, and may be so declared by the court; and so, when there is such an obvious disregard of duty and safety as amounts to misconduct, the court may declare it to be negligence as matter of law. But, where the measure of duty is not unvarying, where a higher degree of care is demanded under some circumstances than under others, where both the duty and the extent of its performance are to be ascertained as facts, a jury alone can determine what is negligence, and whether it has been proved."

As stated in Crissey v. Railway Co., 75 Pa. 83, the principle is as follows: "Where the measure of duty is ordinary and reasonable care, it is always a question for the jury." The same principle is recognized in numerous cases, among which are McCully v. Clarke, 40 Pa. 399; Hey v. Philadelphia, 81 Pa. 44; Fritsch v. Allegheny City, 91 Pa. 226; Burrell Tp. v. Uncapher, 117 Pa. 353; Plymouth Tp. v. Graver, 125 Pa. 24.

In the latter case, our Brother CLARK, delivering the opinion of the court, said : " In general, however, whether a dangerous place, not within the highway, but adjacent to it, or near it, is so near as to make travel unsafe, is a matter for the jury. The question is whether the dangerous place is in such close proximity to the highway, as traveled and used, as to render the use of it unsafe. The decision of such a question is most appropriately made by the submission of it to the practical judgment and experience of a jury, upon a consideration of all the proofs respecting it."

The language so fitly employed in that case may be applied with equal force to the case under consideration. Whether, in consequence of the local changes made by defendants, the pond, of considerable depth, etc., formerly elevated about eight feet above the turnpike, but now on a level therewith, was dangerous, and if so, whether it was in such close proximity to the public road as to render travel thereon dangerous, etc., were, according to all well-considered authorities, questions of fact for the jury. If the changes referred to had been made by the turnpike company, and suit had been brought against it for neglect of duty in not providing a guard-rail or other suitable protection against danger, the same questions would have arisen. By permission of the sequestrator, the changes were made by defendants, for their own convenience and benefit, and it thereby became their duty to provide such protection as the changed condition required, if any. The affirmance of defendants' third, fourth, and fifth points would have had the effect of taking the case from the jury, and holding as matter of law that the defendants, who, for their own convenience and benefit, raised the grade of the turnpike to the level of their pond, and left it in that dangerous condition, without providing any protection whatever as a substitute for the embankment and the fence which they removed, were not guilty of any negligence. This would have been a wide and dangerous departure from well-settled principles. The question of negligence, of which there was an abundance of evidence, was clearly for the jury.

The case was carefully and correctly tried, and, in the absence of any reason for disturbing the verdict, I cannot assent to its reversal.