Rockingham, June 4, 1940. } No. 3176.

DAISY F. WHITE *v.* SUNCOOK MILLS.

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Alvin A. Lucier* (by brief and orally), for the defendant.

BRANCH, J.   There was evidence tending to prove the following facts.   The defendant is the owner of a parcel of land in the village of Suncook, situated between a public highway known as Depot Street, and the Suncook River.   This land slopes sharply down to the river and at the point in question a retaining wall some twenty-five feet in length and of unspecified height had been erected at the

top of the bank. There had also been erected at this point a structure which is referred to by the plaintiff, somewhat inaccurately, as a "grease pit." This structure consisted of two, twelve-inch I beams running toward the river, supported at one end by the retaining wall and at the other by a framework of timber. The beams being laid on their sides thus furnished two channels sufficient to support and guide the wheels of an automobile when driven upon them and the slope of the bank was such that when an automobile was driven onto this structure, work could be done upon it from below. To facilitate such work some kind of a wooden floor had been built below the beams. The ends of the beams on top of the wall were embedded in a concrete block and although the evidence as to the precise limits of the highway was not wholly convincing, it might be found that this block extended to the very edge of the highway as laid out by the selectmen. The northerly edge of the traveled part of the highway as used by vehicles was, however, some twelve or fourteen feet from the edge of the cement block and through this space ran a cinder path which has been replaced since the accident by a cement side-walk. The space between the roadway and the defendant's retaining wall was frequently used as a parking place, especially at night when large numbers of people were attending a neighboring theatre.

Depot Street was laid out as a public highway by the selectmen of Allenstown in 1910. It did not clearly appear when or by whom the retaining wall was built or the rest of the structure above described erected. It is not a necessary conclusion from the present record that the beams above mentioned were placed in position at the time the retaining wall was constructed. At the time of the occurrences hereinafter described there was a building, since destroyed, standing upon the defendant's land immediately to the east of the so-called grease-pit, and to the corner of this building a gate had been attached in such a way that it might be swung in front of the space between the two beams and thus prevent persons from entering upon or falling between them. This gate, at the time of the accident, was out of repair and there was evidence that it had not been in use for more than two years before.

On October 1, 1937, the plaintiff came to Suncook for the purpose of attending a theatrical production at the theatre above referred to. She came in an automobile driven by one of her daughters and was accompanied by another daughter, the daughter's husband and their children. The plaintiff sat with the driver on the front seat of the car which was of the type known as a two-door coach. The plain-

tiff's daughter drove the car into Depot Street for the purpose of finding a parking place and was directed by a police officer to park opposite the bank wall above described, from which position another car had just been driven away. The driver accordingly parked the car between the roadway and the bank wall and the plaintiff alighted on the right hand side between the car and the wall. The lights of the car were extinguished as soon as it stopped and the occupants of the car were, therefore, forced to get out in the dark. In regard to the subsequent occurrences the plaintiff testified as follows: "Q. And what happened when your car was parked? A. Well, she switched off the lights and she started to get out on one side and I was getting out of the other side to let my other daughter and husband get out. Of course I took hold of the door and swung it back and as I did so I let go of the door for them to come out, I stepped back maybe a step and I caught my foot in something, I don't know what it was. I guess it must have been a rut or something and I felt myself go but I couldn't catch myself and I was screaming and that was the last I knew." The plaintiff in fact fell over the retaining wall between the beams of the "grease pit" and sustained the injuries for which a recovery is sought in this action. The plaintiff's daughter who was sitting in the rear seat testified upon cross-examination: "My mother's heel caught on probably what was the first beam and she went right over between."

One phase of the law with reference to situations like that above described has been stated with substantial accuracy as follows: "A possessor of land who creates or maintains thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact therewith while traveling with reasonable care upon the highway, is subject to liability for bodily harm thereby caused to them." 2 Restatement of Torts, s. 368. "The rule stated in this Section applies to injuries sustained upon the possessor's land by persons whose entry thereon is due to their unintentional and innocent deviation from an adjacent highway." *Ib. com.* f.

The rule above stated, although not formulated in general terms, is clearly the underlying basis of the decision of this court in *Chickering* v. *Thompson*, 76 N. H. 311. Considered in the light of this rule of law we think that the findable facts above set forth would furnish an adequate basis for a conclusion that the defendant was at fault and that this issue should have been submitted to the jury.

The specific arguments by which the defendant seeks to escape this conclusion may be briefly considered. The first contention is stated in its brief as follows: "In any event, the retaining wall had been erected on the defendant's land prior to the establishment of the highway. . . . Under these circumstances, the duty to guard a dangerous condition, if any there was, was upon the Town and not upon the owner of the land." The only authority cited in support of this argument is comment b. to the section of the Restatement referred to above, which seems to state the law in accordance with the defendant's contention. We have not been able to discover upon what judicial authority this comment is based.

It should first be noted that as the case is now presented, the factual basis of the defendant's argument is lacking. As above indicated, the evidence does not compel the conclusion that the retaining wall was erected prior to the layout of the highway. It should also be pointed out that the defendant's argument ignores the other factors of danger involved in the maintenance of the so-called grease pit, namely, the cement block and the channels in the I beams, both of which might be found to have created irregularities in the surface of the ground upon which travelers might reasonably be expected to alight. Nevertheless, in order that the law applicable to the case may be fully understood at another trial, the question of the defendant's liability has been considered upon the assumption that the retaining wall may be shown to have been erected on the defendant's land prior to the establishment of the highway.

By adopting the position above stated, counsel for the defendant fails to take into account the possibility that conduct which is not unlawful at its inception may, by reason of changing circumstances, become unlawful if continued (*Hood* v. *Nashua*, decided this day *post* 98; *Commmonwealth* v. *Upton*, 6 Gray 473; *Ashbrook* v. *Common- wealth*, 1 Bush. 139), and ignores the rule that an excavation adjoining a public highway or so near thereto that a person lawfully and with ordinary care using the way may, by accident, fall into it, is a public nuisance. Wood, Nuisances (2d *ed.*) *s.* 271; *State* v. *Society*, 42 N. J. L. 504.

When Depot Street was laid out as a public highway in 1910, a new relationship between the defendant and the public was created and structures which had been lawfully maintained up to that time by the defendant upon its own land might, in view of the changed situation, take on the character of nuisances. It is well settled law that it is "no answer to an action for maintaining a nuisance that

the plaintiff acquired the rights in respect to which he is damaged, after the nuisance was created, and with knowledge of its existence," (*State* v. *Society, supra*), and we think that this rule is applicable as well to public as to private nuisances. It is equally well settled that no right to maintain a public nuisance can be acquired by a lapse of time. *State* v. *Company*, 49 N. H. 240.

No case in this country has been found which justifies the maintenance of a public nuisance interfering with the use of a public highway upon the theory that it came into existence before the highway was legally established. On the contrary, in *Holyoke* v. *Company* 174 Mass. 424, the defendant was held liable for the maintenance of a spout which discharged water upon a public highway in such manner as to constitute a nuisance although it appeared that the installation of the water spout and its use in the manner complained of antedated the establishment of the highway. So, too in *Commonwealth* v. *Blaisdell*, 107 Mass. 234, which was an indictment for maintaining a nuisance consisting of a flight of steps in a public street, a verdict of guilty was sustained although there was evidence tending to show that the steps were erected four years before the highway was laid out. Indeed, neither court nor counsel appear to have regarded this fact as of importance in determining the guilt of the defendant. In both *Commonwealth* v. *Upton* and *Ashbrook* v. *Commonwealth, supra*, the establishment of roads, after the offensive activities in question had been commenced, was one of the factors considered in determining the liability of the defendants.

It is true that in the English case of *Fisher* v. *Prowse*, 2 B. & S. 770, it was held that where land upon which an excavation exists is dedicated to the public as a highway, the dedication must be taken to be made to the public and accepted by them subject to the inconvenience or risk arising from the actual condition of things. In that case it was said by *Blackburn*, J.: "If the use of the soil as a way is offered by the owner to the public under given conditions and subject to certain reservations, and the public accept the use under such circumstances, there can be no injustice in holding them to the terms on which the benefit was conferred." Whatever may be thought of this theory of offer and acceptance when applied to highways created by dedication (see Wood, Nuisances, s. 243), we think that it is clearly inapplicable to a highway established by public authority under the right of eminent domain and we, therefore, hold that if the retaining wall in question was maintained by the defendant so close to the boundary of Depot Street after it became a public highway as to

endanger travelers making a lawful use of the street, it was a public nuisance for the maintenance of which the defendant is subject to liability to anyone sustaining special damage as a result thereof. The problem of the mutual obligations of adjoining landowners is a factual one requiring reasonable adjustment. In *Shea* v. *Railroad*, 88 N. H. 462, it was found that such a reasonable adjustment did not require the reconstruction of an important and permanent structure adjoining a highway in order to make the use of the highway more convenient and safe when the real danger was inherent in the construction of the highway rather than the nature and location of the structure. If any of the language used in that opinion seems inconsistent with the views herein expressed it is to be read with reference to the factual situation there disclosed.

The record strongly indicates that the question whether the erection of the retaining wall antedated the laying out of Depot Street, may be indecisive for another reason. It was conceded at the trial that for some time prior to the layout of Depot Street in 1910, the defendant had maintained a private way in the same location, which was known both as Canal Street and as China Road, and although the evidence upon this point is not specific, the record strongly suggests the inference that this private road was used by the public for the same purposes and in the same way that Depot Street has since been used. Under these circumstances, if the defendant erected the retaining wall in question so close to the edge of a way commonly used by the public as to endanger travelers thereon, it might be held liable to one injured as a result thereof under the well established rule of negligence which is set forth in Section 367 of the Restatement of Torts as follows: "A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway, is subject to liability for bodily harm caused to them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel." *Beck* v. *Carter*, 68 N. Y. 283. We think it clear that this basis of liability, once established with reference to an adjacent excavation, would not be terminated or lessened in scope by the legal layout of a public highway in the same location as the ostensible highway previously existing.

The argument of the defendant that "The plaintiff was a trespasser under any construction of the evidence" is clearly without merit. Her movements after she stepped from the automobile, and certainly those which she made after her heel caught, might properly be re-

garded as involuntary and accidental and it is well settled in this jurisdiction that an involuntary or accidental entry upon the land of another is not a trespass. *Puchlopek* v. *Company*, 82 N. H. 440.

The argument of the defendant that the plaintiff was guilty of contributory negligence as a matter of law is equally without merit. The assertion that "In complete darkness (she) walked backward away from the car not knowing what she might encounter," embodies a view of the evidence which the trier of the fact might properly reject.

We therefore conclude that upon the evidence which she produced at the trial, the plaintiff was entitled to go to the jury.

*New trial.*

All concurred.