Boutelje *v.* Tarzian, Appellant.

Argued October 14, 1940.

276

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*Francis T. Anderson,* for appellant.

*Philip A. Campbell,* with him *Victor Frey,* of *Frey & Campbell,* for appellee.

OPINION BY KELLER, P. J., November 13, 1940:

The judgment in this action of trespass must be reversed.

Defendant was the owner of a triangular lot of land located at the northwest corner of Howard and Tusculum Streets in the city of Philadelphia. These streets meet at that corner at an angle of about 63°. The lot fronted 42 feet, 8⅛ inches on the west side of Howard Street and extended in depth westward from Howard Street 78 feet, 10¼ inches along the north side, and northwestward along Tusculum Street 89 feet, ¾ inch, on the other side. A factory was built on the corner; this building extended 40 feet along Tusculum Street. Immediately beyond the factory building, on that street, was an areaway or entry leading into the rear of defendant's home, which faced on Howard Street—No. 3004 N. Howard Street—and beyond the areaway was a garage fronting on Tusculum Street.

The entry or areaway into the rear of defendant's home was 8 feet, 3 inches wide, with a frontage on

Tusculum Street of 9 feet, 5 inches. The entire areaway was paved with concrete. The slope of the ground from Tusculum Street was downward, and in consequence the areaway was constructed on two levels, the southern part, fronting on Tusculum Street being level with the twelve-foot wide sidewalk on said street, and the northern half being $16\frac{1}{2}$ inches lower. The higher portion was in the shape of a trapezoid, the parallel sides being bounded by the walls of the factory and garage, respectively, and running 7 feet, 4 inches along the factory and 3 feet, 2 inches along the garage, and the distance on the side opposite Tusculum Street and at right angles to the parallel sides, being 8 feet, 3 inches. The lower half was rectangular in shape, 8 feet, 3 inches by 5 feet, 5 inches. Approach from the upper to the lower level was by a concrete step 2 feet, 3 inches wide, next to the factory wall on the east; the tread of the step was $9\frac{1}{2}$ inches below the upper level and 7 inches above the lower level.

On the early morning of November 21, 1938, the plaintiff, a widow, residing at 2251 N. Mutter Street, was on her way home with one James Arthur Hayes, who resided at the same place. They had been together at the Blue Bell Club, located at Ontario and "B" Streets and maintained for the purpose of selling liquor. Hayes was employed there as a piano player. They left the club together, a few minutes before one o'clock in the morning, and started to walk home. Hayes, who was called as plaintiff's witness, testified on direct examination: "When we came to Tusculum and Howard Street I had to take a walk. I left her standing by the building, [the factory] and told her to wait there ......
The next thing I heard, I came back—I was away about a few seconds, and when I came back, why I heard somebody hollering in agony." "Q. Who was it hollering? A. Why, my friend, Mrs. Boutelje".

It developed that, instead of waiting for Hayes, she

continued walking. The night was cloudy and dark. In some way she wandered off the sidewalk onto the entry or areaway leading into the rear of defendant's house, above referred to, and walked off or over the 16½ inch difference in the concrete levels, causing her to fall, as a result of which several bones were broken and she sustained injury. She brought this action in trespass and recovered a verdict. The court refused defendant's point for binding instructions and discharged his rule for judgment non obstante veredicto. Defendant appealed.

Just how the plaintiff wandered off the sidewalk, which was bounded on her right by the factory wall, and turned aside into the entry or areaway, instead of walking ahead on the sidewalk past the garages, she was unable to explain. Her claim is that she was entitled to recover because the defendant did not put up a railing or other protection for the six foot space between the garage wall and the step to the lower level of the entry or areaway; but wandering around off the sidewalk, as she was doing, she might just as well have fallen down the step.

The authorities cited by the appellee and the court below are not here applicable. There was no ditch or excavation or dangerous condition existing here which would be likely to prove a trap or pitfall to the public using the sidewalk. On the contrary it was a perfectly proper and normal use by the defendant of his own property. He had no reason to suppose that in the 9½ feet intervening between his two buildings any passerby, properly using the sidewalk, would divert his walk from the sidewalk into this areaway and fall over this difference in levels. Appellee's counsel argued that she traveled only 3 feet, 2 inches on defendant's entry way, but this would assume an abrupt, almost right-angle, turn into the entry way, right by the wall of the garage; which, of itself, would be negligence on her part. On

the other hand, if she wandered off the sidewalk near the end of the factory building, she would have been walking on defendant's property for about ten feet before she fell, and was responsible for the consequences. While owners of real estate may be held liable for excavations, ditches, declivities, etc., amounting to traps and pitfalls, so close to the street that an inadvertent step off the sidewalk may bring injury to a passerby, they are not required to put guards or railings around steps, terraces and other necessary differences in grade on their own property, which are not in themselves inherently dangerous, in order to protect wanderers on their premises, who have no business there, from being hurt.

The quotation from the Restatement of Torts, section 368 (Vol. 2, p. 996) and the comment and illustrations thereunder (pp. 997-1000) relied on by the court below, are not opposed to our position, for the condition existing on the defendant's property was not such that a reasonably prudent person should have "realized" that it involved "an unreasonable risk to others accidentally brought into contact therewith while traveling with reasonable care upon the highway." [1]

The assignments of error are sustained. The judgment is reversed and is now entered for the defendant.

---

[1] The following cases cited in the Pennsylvania Annotations to the Restatement in accord with the section and comment, *Gillespie v. McGowan,* 100 Pa. 144; *Horstick v. Dunkle,* 145 Pa. 220, 23 A. 378; and *Hildebrand v. Director General of Railroads,* 270 Pa. 86, 112 A. 875, support our position, although the facts in those cases were not as favorable to the respective *defendants* as were the facts of this case.