Thomas COLLIER

v.

REDBONES TAVERN & RESTAURANT,
INC.; Robert Shallow; James River
Corporation of Virginia; Seven Islands
Land Company.

Thomas F. COLLIER

v.

VOLKSWAGEN OF AMERICA, INC.

Civ. Nos. 82–630–D, 85–40–D.

United States District Court,
D. New Hampshire.

Jan. 31, 1985.

Peter S. Cowan, Manchester, N.H., for plaintiff.

Michael P. Lehman, Concord, N.H., for James River.

David J. KillKelley, Laconia, N.H., for Redbones and Shallow.

Ralph R. Woodman, Jr., Portsmouth, N.H., for Seven Islands.

## ORDER

DEVINE, Chief Judge.

In this action,[1] plaintiff Thomas Collier seeks damages against defendants James River Corporation of Virginia ("James River") and Seven Islands Land Company ("Seven Islands") for injuries sustained when a car in which plaintiff was a passenger struck a culvert situated within a State of New Hampshire right-of-way adjacent to defendants' property.[2] Plaintiff premises defendants' liability on claims of negligence, negligence *per se,* and nuisance. Plaintiff is a citizen of New Jersey; James River is a Virginia corporation with a principal place of business in Richmond, Virginia; and Seven Islands is a Maine corporation with a principal place of business in Bangor, Maine. Jurisdiction is founded on 28 U.S.C. § 1332, the citizenship of the parties being diverse and the amount in controversy exceeding $10,000 exclusive of interest and costs. This matter now comes before the Court on defendants' motion for summary judgment and plaintiff's motion to amend the complaint and the *ad damnum.*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In this Circuit, the test to which a summary judgment motion must be put has traditionally been a stringent one. The moving party must affirmatively demonstrate that there is no genuine, relevant factual issue, and the Court must look at the record in the light most favorable to the party opposing the motion and indulge all inferences favorable to that opposing party. *General Office Products Corp. v. M.R. Berlin Co., Inc.,* 750 F.2d 1 at 3 (1st Cir.1984); *Donovan v. Agnew,* 712 F.2d 1509, 1516 (1st Cir.1983); *Gual Morales v. Hernandez Vega,* 579 F.2d 677, 680–81 (1st Cir.1978).

The record reveals the following facts. Plaintiff was a passenger in an automobile driven by Mark Gemmetti on November 14, 1981. Gemmetti, drunk and speeding, lost control of the automobile as it approached a curve on Route 16 between Errol and Berlin, New Hampshire. The automobile left the paved portion of Route 16, a Class I highway, traveled through a drainage ditch parallel to Route 16, and finally collided with a culvert situated under an abandoned logging road. In 1933 the State of New Hampshire completed a layout proceeding which confirmed the establishment of the present Route 16 and created a right-of-way for the highway 66 feet in width. The culvert at the point of impact was nine feet from the paved portion of the highway, thus located entirely within the State of New Hampshire's right-of-way. The abandoned logging road prior to reaching the curve on Route 16 traverses the

---

1. This Order concerns only the original civil action, No. 82–630–D. The later civil action, No. 85–40–D, in which plaintiff seeks damages against the manufacturer of the automobile involved, has recently been consolidated with the original civil action and is not referred to in this Order.

2. Plaintiff has also sought damages against Redbones Tavern & Restaurant, Inc., where the driver of the car, Mark Gemmetti, had been drinking, and against Robert Shallow, the owner of the tavern property. Plaintiff had also sought damages against Gemmetti, but that claim was settled on July 2, 1984.

adjacent land owned jointly by James River (a 25% interest) and by the heirs of the Coe and Pingree families (a 75% interest). At the time the logging road was built, James River's predecessor, the Brown Company, owned the 25% interest. The Coe and Pingree interest was and is managed by and is the responsibility of Seven Islands. After traversing this land owned and managed by defendants, the road ends on property belonging to the heirs of the Twitchell family, property which is landlocked behind defendants' property. Although it is unclear as to who constructed the road and culvert or when it was constructed, it is undisputed that defendants did not build the logging road or install the culvert, nor do they have an ownership interest in the situs of the accident. The installation of the culvert was accomplished without a proper permit in violation of New Hampshire Revised Statutes Annotated (N.H. RSA) 249:17 I (1950). The most recent use of the logging road was by William Martineau, who used it in 1964 to access the Twitchell property for harvesting wood. James River's predecessor, Brown Company, and Seven Islands knew of the road and its use.

■ The Court in addressing plaintiff's negligence claim must consider the threshold issue of whether or not defendants' conduct created a foreseeable risk of harm to plaintiff. Resolution of this question, for purposes of deciding the motion for summary judgment, rests within the purview of the Court. According to the New Hampshire Supreme Court in *Paquette v. Joyce*, 117 N.H. 832, 834, 379 A.2d 207 (1977), "[i]t is a question of law for determination by the court whether the defendants' conduct created such a foreseeable risk of harm to the particular plaintiff that defendants were under a duty to avoid it." The Court concludes, based on the following, that the culvert did not present a foreseeable risk of harm. This conclusion obviates the need to decide whether or not defendants controlled and were obligated to maintain a culvert situated within a State right-of-way in a reasonably safe condition.

■ The court in *Paquette v. Joyce, supra*, confronted a similar negligence issue when a defendant landowner with property abutting a state highway cut down a tree, leaving a stump six feet from the roadway. The plaintiff passenger was injured when the car in which he was traveling left the roadway on a curve, the site of several previous accidents, and struck the stump. The court found that the stump did not present a foreseeable risk of harm to normal users of the highway. The court rationalized that the tree stump presented as much a hazard as the tree itself and that the defendant had not introduced a new object which increased the risk of impact to normal users of the highway. The court acknowledged New Hampshire's adoption of the Restatement (Second) of Torts § 368, which provides that:

A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel.

The court recognized that section 368 normally extends liability in those cases where a defendant introduces "an object in close proximity to the highway that was not there before, thereby increasing the risk of impact to travelers" on the highway or where a defendant creates a condition that constitutes a hidden trap to highway travelers. *Id.* at 836, 379 A.2d 207. Since the defendant in *Paquette* did neither of these things, no liability under section 368 was found to attach. The court, however, in concluding that the stump was not a hidden trap, did note that the stump "was dangerous only to travelers six feet off the highway encountering it at sufficient speed to be injured by the impact, to whom the

diminished visibility of the object would in most cases be irrelevant." *Id.* The court went further in holding that it was "not prepared to say defendants' conduct introduced a risk that was appreciable enough to be *foreseen* and that would give rise to a duty to avoid." *Id.* (emphasis added). Thus it is apparent that the court applied a foreseeability analysis in finding the defendants free of liability. Plaintiff ignores this foreseeability analysis in arguing that *Paquette v. Joyce* is inapposite.

In the instant case, the Court is not prepared to say that defendants' conduct introduced a risk that was appreciable enough to be foreseen. The culvert as an artificial condition or as a hidden trap was dangerous only to travelers nine feet off the highway encountering it at sufficient speed to be injured by the impact. The nine-foot distance from the culvert to the road supports the conclusion that the culvert did not present a risk appreciable enough to be foreseen. As Restatement (Second) of Torts § 368, Comment h, makes clear, the distance from the roadway is an important and often decisive factor in ascertaining the reasonable foreseeability of the risk of harm created by the location of a condition in proximity to a roadway. *See, e.g., Burchfield v. Smith*, 295 F.Supp. 1126 (D.Miss.1969) (unforeseeable deviation into drainage ditch with pipes 24 feet from pavement); *Hoffman v. Vernon Township*, 97 Ill.App.3d 721, 53 Ill.Dec. 135, 423 N.E.2d 519 (1981) (unforeseeable deviation into utility pole 12 to 16 feet from pavement); and *Boutelje v. Tarzian*, 142 Pa.Super. 275, 16 A.2d 146 (1940) (unforeseeable deviation into areaway dropoff 3 feet from sidewalk).

The Court's foreseeability analysis in the instant case must also include a determination of whether plaintiff foreseeably deviated from the highway in the ordinary course of travel. In concluding that plaintiff did not foreseeably deviate from Route 16, the Court considered the insight offered by the official comments of section 368:

> [This section] applies ... to those who reasonably and expectably deviate from the highway and enter upon the abutting land in the *ordinary course of travel.* The possessor is required to anticipate the possibility of such deviations and to realize, where a reasonable man would do so, that the traveler so deviating may encounter danger. The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the *normal incidents of travel.*

Restatement (Second) of Torts § 368, Comment e (emphasis added). The official comments further clarify the application of this section by noting that:

> In determining whether the condition is one which creates an unreasonable risk of harm to persons *lawfully* traveling on the highway and deviating from it, the essential question is whether it is so placed that travelers may be expected to come in contact with it in the course of a deviation reasonably to be anticipated in *the ordinary course of travel.*

Restatement (Second) of Torts § 368, Comment h (emphasis added).

It is thus obvious to the Court that there are specific limitations imposed in the application of Restatement (Second) of Torts § 368. As emphasized above, these limitations to a finding of reasonable foreseeability are that a lawfully-traveling person must deviate in the ordinary course of travel and as a normal incident to travel. The specific question for the Court to answer is whether a lawfully-traveling person deviating from Route 16 in the ordinary course of travel and as a normal incident of travel might reasonably be expected to collide with a culvert located nine feet from the road. The Court cannot divine such a reasonable expectation under the facts presented in the record.

It is undisputed that the driver of the car in which plaintiff was a passenger was not lawfully traveling on Route 16. The driver was both intoxicated and speeding. It was not reasonably foreseeable to defendants that a drunk driver would speed off the road and collide with the culvert. More-

over, such an erratic and uncontrolled deviation from the roadway cannot be considered a normal incident of travel nor one encountered in the ordinary course of travel. This conclusion is supported by the fact that no previous accidents have been documented at the site of the logging road and culvert.

While plaintiff asserts that the culvert was located on a curve where vehicles traveling on Route 16 were more likely to deviate from the paved portion of the highway, especially in emergency situations, the mere possibility of a deviation from a roadway is not a sufficient finding when the standard is one of reasonable foreseeability. According to W. Prosser, Handbook of the Law of Torts § 31 (4th ed. 1971),

> [n]early all human acts, of course, carry some recognizable but remote possibility of harm to another.... No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.

The Court concludes that while the culvert might present a possible risk to travelers, it did not present a reasonably foreseeable risk to travelers on Route 16, particularly where the driver of the vehicle was intoxicated and speeding and the deviation from the roadway was not a normal incident of travel. Accordingly, where the defendants could not reasonably foresee any injury resulting from the placement of the culvert, there can be no negligence and no liability attributable to defendants. *Paquette v. Joyce, supra,* 117 N.H. at 837, 379 A.2d 207, *citing* W. Prosser, *supra* at 543. Consequently, defendants' motion for summary judgment with respect to the negligence claim must be granted.[3]

■ Plaintiff's negligence *per se* claim is based on an alleged violation of N.H. RSA 231:109 (1981), which provides that:

Any person or corporation, except municipal corporations, through whose *negligence* or *carelessness* any obstruction, defect, insufficiency, or want of repair is caused upon any highway, shall be liable to any person injured by reason thereof, and the damages may be recovered in an action on the case, provided that this part shall not enlarge the common law liability of public officers.

(Emphasis added.) It is well settled that a causal violation of a statutory standard of conduct can result in the imposition of civil liability when the consequences contemplated by the statute have actually resulted from the violation. *Emery v. Booth,* 114 N.H. 646, 647–48, 325 A.2d 788 (1974); *Moulton v. Groveton Papers Co.,* 112 N.H. 50, 52, 289 A.2d 68 (1972).

■ A statutory violation of N.H. RSA 231:109 will be found in the instant case if defendants negligently or carelessly caused an obstruction upon Route 16 resulting in injury to plaintiff. The Court has already concluded that defendants were not negligent since the culvert did not present a reasonably foreseeable risk to travelers in the ordinary course. The negligence *per se* claim rests therefore on whether defendants carelessly caused an obstruction upon the highway. While "carelessness" is not statutorily defined, the New Hampshire Supreme Court has on occasion offered insight into its meaning. "Carelessness means wrong thinking or failure to think in connection with action." *Smith v. Boston & Maine Railroad,* 87 N.H. 246, 257, 177 A. 729 (1935). Moreover, in determining whether a party was careless in a given situation, the party's thinking and conduct should be "tested by the thoughts and conduct of the average person under the same circumstances." *Id.* Since it has previously been determined that an average person in defendants' position would not have foreseen the risk of impact with a culvert nine feet from the roadway, the Court concludes that this same average person could not be

---

3. As noted above, as a result of the Court's finding that the culvert did not present a reasonably foreseeable risk to travelers in the ordinary course, it is not necessary to reach the issue of whether or not defendants owed a duty to plaintiff with respect to maintenance, control, and location of the culvert.

guilty of wrong thinking or failing to think with respect to the culvert's placement. Defendants therefore cannot be deemed careless within the meaning of this statute. Accordingly, since defendants neither negligently nor carelessly caused an obstruction within the meaning of N.H. RSA 231:109, their motion for summary judgment with respect to the negligence *per se* claim must be granted.

█ According to plaintiff, his nuisance claim against defendants can be summarized as follows:

One who, without special authorization, creates or continues a dangerous condition or obstruction in a public highway, street, or sidewalk, does so at his own peril and is liable for injuries proximately resulting therefrom.

39 Am.Jur.2d *Highways, Streets, and Bridges* § 359, p. 743 (1968). Plaintiff further cites *White v. Suncook Mills*, 91 N.H. 92, 96–97, 13 A.2d 729 (1940), which provides that an excavation adjoining a public highway or so near to the highway that a person lawfully and with ordinary care using the highway may by accident fall into it is a public nuisance. A public nuisance under New Hampshire law has been further described as "an unreasonable interference with a right common to the general public" and "behavior which unreasonably interferes with the health, safety, peace, comfort or convenience of the general community". *Robie v. Lillis*, 112 N.H. 492, 495, 299 A.2d 155 (1972).

The Court upon review of the record concludes as a matter of law that defendants did not create or continue a public nuisance upon Route 16. As noted above in its discussion of plaintiff's negligence claim, the Court ruled that defendants could not reasonably foresee that the culvert would present a hazard to the traveling public. Under the circumstances of this case, therefore, it cannot be said that defendants' conduct "unreasonably interfered" with public safety along Route 16. This conclusion is buttressed by Restatement (Second) of Torts §§ 824, 839. According to section 824:

The conduct necessary to make the actor liable for either a public or private nuisance may consist of

(a) an act; or

(b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest.

It is, as noted above, undisputed that neither defendant James River nor defendant Seven Islands "acted" to create or install the subject culvert and road. Plaintiff's nuisance claim rests therefore on the proposition that defendants failed to act in permitting the continuance of an obstruction along Route 16. Liability for failure to act in a public nuisance situation is explained in Restatement (Second) of Torts § 839. This section provides in pertinent part that:

A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and

(a) the possessor *knows or should know of the condition and the nuisance or unreasonable risk of nuisance* involved....

(Emphasis added.) According to Comment i of this section which discusses what a possessor "should know" before liability will attach for failure to act,

[w]hat the possessor should know ... depends first upon whether his land is in such condition that he, as a reasonable man, would be led to believe that it might be in a harmful condition and that an inspection of it was necessary.

Under the circumstances of this case, since defendants could not reasonably foresee that the culvert would present a hazard to the traveling public, they did not know nor should they have known that the culvert presented an unreasonable risk of nuisance. Therefore, no liability for failing to abate a public nuisance will attach. Accordingly, since defendants did not create

or continue a dangerous condition along Route 16, defendants' motion for summary judgment with regard to the nuisance claim must be granted.

Plaintiff has also moved to amend his complaint to reflect his change of residence from New Jersey to North Carolina as well as to amend his *ad damnum* from five million two hundred thirty-five thousand dollars ($5,235,000) to fifteen million two hundred thirty-five thousand dollars ($15,235,000) on the ground that his injuries are of a more disabling nature and his future income as a physician would be more adversely affected than originally believed. These motions are moot as to defendants James River and Seven Islands in light of the Court's affirmative ruling in their motions for summary judgment. They are not, however, moot with respect to the two remaining defendants, Redbones Tavern & Restaurant, Inc., and Robert Shallow. Neither of these defendants has objected to these motions within the ten-day time period under Local Rule 11. The Court accordingly grants plaintiff's motion to amend the complaint to reflect the change of residence. The Court, however, pursuant to its power under Rule 15(a), Fed.R.Civ.P., will defer ruling on the motion to amend the *ad damnum* until final pretrial. However, if at final pretrial it is determined that the proposed increase in plaintiff's *ad damnum* exceeds the remaining defendants' insurance coverage, which would of necessity require a continuation of the trial due to the exposure of defendants' personal assets and subsequent need of personal counsel, the Court will deny this late-filed motion to amend the *ad damnum*.

In summation, the Court grants the motion for summary judgment of defendants James River and Seven Islands, grants plaintiff's motion to amend the complaint to reflect the plaintiff's change of residence, and defers ruling on plaintiff's motion to amend the *ad damnum* until final pretrial.

SO ORDERED.